**IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF IOWA
DAVENPORT DIVISION**

| | |
|---|---|
| **ALTOVESE WILLIAMS, individually, and as Administrator of the Estate of Marquis Jones, and as next of Friend for Minors B.B.D., M.R.J., P.D.J., M.R.J.II, and M.R.H.,** | **Case No.** |
| **Plaintiffs,** | **COMPLAINT AND JURY DEMAND** |
| **v.** | |
| **CITY OF BURLINGTON, CHRIS CHIPREZ, JOSHUA RIFFEL, JOHN DOE 1 AND JOHN DOE 2,** | |
| **Defendants.** | |

**COMES NOW** the Plaintiffs, Altovese Williams, individually and as Administrator of the Estate of Marquis Jones, and as next friend of B.B.B., M.R.J., P.D.J., M.R.J., II, and M.R.H. and for their Complaint and Jury Demand against Defendants City of Burlington, Chris Chiprez, Joshua Riffel, John Doe 1 and John Doe 2, state to the Court, as follows:

## <u>INTRODUCTION</u>

1.      This is an action brought to redress the deprivation – under color of policy, regulation, official decision, custom, or usage – of rights secured to Plaintiff by 42 U.S.C. § 1983 and §1985 arising under the Second and Fourth Amendments, incorporated to the states through the Fourteenth Amendment to the United States Constitution, and the Constitution of the State of Iowa, Article I, Sections 1, 2, 8, 9 and 23; and includes Iowa common law negligence, loss of consortium and public records disclosure claims.

## JURISDICTION

2.      Jurisdiction is conferred to this Court through 28 U.S.C. §§1331 and 1343 and venue is appropriate in this district under 28 U.S.C. § 1391(b).

3.      All the unlawful acts alleged herein occurred at in Des Moines County, Iowa, on or about October 1, 2017, except for the long, sordid and ongoing efforts of the City of Burlington covering up the wrongful conduct of its police officers.  See *Hawk Eye v. Jackson*, 521 N.W.2d 750 (Iowa 1994), *Steele v. Burlington*, U.S. District Court, Northern District of Iowa, 3:16-cv-00105-JEG-SBJ, Doc. 95, filed August 14, 2018 and *Klein v. Iowa Public Information Board*, Petition for Judicial Review under I.C.A. §17A.19, Iowa District Court for Polk County, Case No. CV 057831, filed March 22, 2019.

## PARTIES

4.      At all times material hereto, Altovese Williams (hereinafter referred to as "Williams") was a resident of Des Moines County, IA.  Williams is also the mother of Marquis Jones and the Personal Representative of the Estate of Marquis Jones, deceased (herein after referred to as " Jones") who was a citizen and resident of Des Moines County, Iowa.   Williams is also the Next of Friend for the minor children of Marquis Jones, B.B.B., M.R.J., P.D.J., M.R.J., II, and M.R.H.

5.      The Defendant City Burlington includes a police department and other administrative agencies (hereinafter referred to as "Burlington") which employs Defendants Chris Chiprez, Joshua Riffel, John Doe 1 and John Doe 2 whom they failed to properly train, or monitor, and to compensate for the lack of expertise, training and oversight, Burlington intentionally covers up wrongdoing by its police officers.

6.     Defendant Chris Chiprez (hereinafter referred to as "Chiprez") was at all times material hereto an employee of the City of Burlington, Iowa, violated Jones' constitutional rights and ultimately caused the wrongful death of Jones using excessive force.

7.     Defendant Joshua Riffel (hereinafter referred to as "Riffel") was at all times material hereto an employee of the City of Burlington, Iowa and violated Jones' constitutional rights.

8.     Defendants John Doe 1 and John Doe 2 are unknown at this time, but upon information and belief are agents of Defendant City of Burlington, reside in Des Moines County Iowa, and are involved in a conspiracy to cover up the wrongful conduct of Defendants Chiprez and Riffel.

## **FACTUAL BACKGROUND**

9.      Jones was born on May 23, 1990, and was 27 years old at the time he was killed by Defendant Chiprez on or about October 1, 2017.

10.     On October 1, 2017, at 1:50 pm, Jones was followed by Chiprez and Riffel for allegedly playing loud music and was ultimately pulled over even though the music was turned down for over three blocks prior to the traffic stop.

11.     Defendants Chiprez and Riffel chose to follow and stop Jones because Jones was African American.

12.     At the time Chiprez and Riffel chose to follow and stop Jones they had no reason to believe that Jones had any outstanding warrants for arrest, that Jones was carrying any contraband, or that Jones was not permitted to carry a handgun in the State of Iowa under I.C.A. 724.4(4)(i) and 724.7, and as guaranteed under the Second Amendment to the U.S. Constitution. See *District of Columbia v. Heller*, 554 U.S. 570 (2008).

13.     After stopping his vehicle Jones, for reasons that currently remain unknown, got out of the car and began running away with a black bag in his hand.

14.     After Jones was killed the black bag he was carrying was found to contain marijuana, a substance now legal for recreational use in 10 states plus the District of Columbia, and readily available for legal purchase in 23 other states with liberal medical marijuana and/or decriminalization laws.

15.     The pursuit of Jones began with Defendant Chiprez in pursuit on foot and Riffel, pursuing in a police cruiser.

16.     Defendant Riffel's police cruiser was equipped with audio/video recording and Defendant Chiprez was wearing a body cam.  Riffel was also wearing a body cam, but allegedly did not turn it on until later in the pursuit after engaging Jones in a physical scuffle.

17.     At some point Riffel left the cruiser and chased Jones on foot.

18.     Riffel caught and tackled Jones in the street.

19.     Riffel claimed to have observed that Jones had a gun in his right hand.

20.     Neither Riffel nor Defendant Chiprez claimed that Jones fired his gun or even pointed his gun in their direction, or at anyone else.

21.     Riffel grabbed Jones's right arm with his left hand and a struggle ensued.

22.     Riffel is left handed and could not reach his weapon located on his left hip because he was using his left hand to hold onto Jones's right arm.

23.     Riffel realized that he could not control Jones and made the tactical decision to retreat from the altercation.

24.     In order to create space between himself and Jones, Riffel had to let go of Jones' right arm and hand, the hand in which Jones was allegedly carrying a gun.

25.     Jones had a clear opportunity at the time Riffel retreated from their physical altercation to shoot at Riffel or aim his gun at Riffel and he did not do so.  Instead, Jones continued to retreat by running away and attempting to avoid any contact with the Riffel or Defendant Chiprez.

26.     Defendant Riffel allegedly only turned on his body cam after the physical struggle with Jones.

27.     After retreating from the physical altercation with Jones, Riffel informed Defendant Chiprez via radio that Jones had a gun, stating only "gun, gun, he's got a gun, Chip."

28.     Defendant Riffel has never claimed that Jones fired the gun at him or anyone else.

29.     Defendant Riffel did not inform Defendant Chiprez at the time of the incident that Jones pointed the gun at him or anyone else or attempted to point the gun at him or anyone else.

30.     Defendant Riffel has not claimed since the incident that Jones pointed the gun at him or anyone else.

31.     Defendant Chiprez continued to chase Jones on foot and had no difficulty confirming the allegation that Jones had a gun in his right hand stating it "was clearly visible" while Jones was running away.

32.     While chasing Jones Defendant Chiprez told Jones to "drop it, drop it," but gave Jones no opportunity to follow his command before firing at Jones within a second of giving the command.

33.      Defendant Chiprez fired seven shots at Jones in a span of 4-5 seconds without ever noting that Jones fired his gun or even pointed his gun in the direction of Chiprez, Riffel or anyone else.  In addition, Chiprez fired seven shots in Jones direction knowing that occupied structures were in his line of fire in this neighborhood of closely clustered homes.

34.     Despite being shot at seven times Jones did not return fire, or point his gun at Chiprez or Riffel or anyone else, and just continued to attempt to run away.

35.     While running away Jones discarded his gun.

36.     Defendant Chiprez and officer Riffel continue to chase Jones and Defendant Chiprez eventually was able to see Jones lying down on his back in a yard.

37.     At this point Defendant Chiprez claimed to see Jones starting to rise and yelled "stop," but again gave Jones no opportunity to follow his order by firing the fatal shot at Jones in less than a second after yelling stop.

38.     Defendant Chiprez claims that Jones started to rise, "making a motion with his hands at chest level," but was unable to determine if Jones was still holding the gun that was previously clearly visible even though the alleged movement of Jones's hands at chest level was also clearly visible at the time.

39.     Jones was trying to surrender at the time he was shot and killed by Defendant Chiprez.

40.     Defendant Chiprez never gave Jones the opportunity to surrender before shooting and killing him.

41.     Defendant Chiprez did not have sufficient training, experience and or expertise in dealing with fleeing suspects who were believed to be armed, but attempting to surrender.

42.     Defendant Chiprez failed to follow protocol by shooting and killing Jones even though Jones never fired his gun, nor did he ever point his gun at Chiprez or anyone else.

43.     It is legal in the State of Iowa to carry a handgun with a permit and at the time Chiprez fired shots at Jones, and ultimately shot and killed Jones for carrying a gun, Chiprez had

no reason to believe that Jones did not have the necessary permit to carry a gun in the State of Iowa. See I.C.A. 724.4(4)(i) and 724.7.

44.     At all times during the confrontation Defendants Chiprez and Riffel were the aggressors – following, stopping, chasing, tackling, shooting at and ultimately killing Jones who never once engaged in any act of aggression towards Defendants Chiprez or Riffel.

45.     At the time Defendant Chiprez shot and killed Jones, Chiprez had no legitimate reason to believe Jones had committed any crime other than allegedly violating a city noise ordinance and that was a pretextual reason for stopping an African American.

46.     At the time Defendant Chiprez shot and killed Jones, Chiprez had no legitimate reason to believe Jones used or threatened to use deadly force in committing a felony.

47.     At the time Defendant Chiprez shot and killed Jones, Chiprez had no legitimate reason to believe Jones was a threat to inflict bodily harm on himself or any other person.

48.     At the time Defendant Chiprez shot and killed Jones, Chiprez had no legitimate reason to believe Jones would use deadly force against any person unless immediately arrested.

49.     At the time Defendant Chiprez shot and killed Jones, Chiprez used more force than a reasonable officer would use in like circumstances, including Defendant Riffel who never fired his service weapon at Jones.

50.     At the time Defendant Chiprez shot and killed Jones, Chiprez had no legitimate reason to believe that such force was necessary to avoid injury or risk to one's safety or the life or safety of another, or that such force was necessary in order to resist a like force or threat.

51.     At the time Defendant Chiprez shot and killed Jones, Chiprez had no legitimate reason to defend himself or another from any actual or imminent use of unlawful force by Jones.

52.     At the time Chiprez shot and killed Jones, Chiprez had no legitimate reason to believe Jones posed a threat or menace of serious injury to himself or another that could only be averted by shooting and killing Jones.

53.     Jones' production, display, or brandishing of a gun alone was not sufficient grounds for Chiprez to respond by using deadly force because Jones took no action that created a reasonable expectation that he may use deadly force to defend himself.  In fact, Jones' conduct during the incident created a reasonable expectation that all he wanted to do was retreat and avoid a confrontation with Defendants Chiprez and Riffel.

54.     Defendants Chiprez and Riffel had other available means to capture Jones without using deadly force.

55.     At the time Defendant Chiprez shot and killed Jones, no reasonable officer with knowledge of the facts Chiprez knew, or should have known at the time, would have concluded Jones was a fleeing felon.

56.     At the time Defendant Chiprez shot and killed Jones, no reasonable officer with knowledge of the facts Chiprez knew, or should have known at the time, would have concluded Jones posed a threat to human life.

57.     At the time Defendant Chiprez shot and killed Jones, no reasonable officer with knowledge of the facts Chiprez knew, or should have known at the time, would have concluded Jones posed a threat of immediate danger of serious physical injury to another.

58.     273,852 Iowans held open/conceal carry permits for guns in 2017.  See https://www.gunstocarry.com/concealed-carry-statistics/.  In 2017 the population of the State of Iowa was 3.146 million people.  See https://www.census.gov/quickfacts/ia.  At the time

Defendant Chiprez shot and killed Jones for carrying, not shooting or even pointing the gun at anyone, roughly one out of every dozen Iowans were licensed to open/conceal carry a gun.

59.     Defendant Chiprez did not act as an objectively reasonable officer would have acted under the circumstances given that he used deadly force when not faced with an imminent threat of significant injury or death.

60.     Defendant Chiprez's stated justification for shooting and killing Jones would apply equally to any of the 273,852 Iowans with permits to open/conceal carry guns who did nothing more than run away from Chiprez after he attempted to stop them.

61.     Defendant City of Burlington failed to properly train Chiprez and Riffel; and/or failed to properly monitor and oversee Chiprez's and Riffel's activities as law enforcement officers.

62.     Defendant City of Burlington's General Orders on Use of Deadly force applicable at the time Chiprez chose to shoot and kill Jones were outdated and not in compliance with Iowa law.

63.     Because of the manner in which Defendant Burlington handled the shooting death of Autumn Steele by police officer Jesse Hill in 2015, Defendant Chiprez was aware that he could use excessive force to kill Jones without concern of being charged criminally, without suffering any adverse employment consequences and that Defendant Burlington would make every effort to cover up his wrongful conduct.

64.     The City of Burlington has a history of covering up wrongful conduct by its law enforcement officers including by fighting release of police video and reports in violation of Iowa's open records laws; editing video downloaded from body cams; ignoring inculpatory evidence when drafting investigative reports of alleged wrongdoing by officers; releasing video

to the public edited to exclude inculpatory evidence of police officer wrongful conduct; and participating in the publication of false narratives to the public in order to conceal the wrongful conduct of its officers.

65.     In this case the Defendant City of Burlington participated in an attempt to cover up the wrongful conduct of Defendants Chiprez and Riffel by releasing only a selected portion of the available audio/video of the incident; refusing to release investigative reports of the incident even those generated or filed within 96 hours of the incident; refusing to release interview transcripts and other records regarding the shooting and killing of Jones; and refusing, in violation of Iowa law, an open records request for such information.

66.     In this case the Defendant City of Burlington participated in further wrongful acts by initially refusing to turn over Jones' cell phone to its rightful owner at the completion of the criminal investigation of the case, for the specifically stated purpose of keeping possession of the cell phone in the event a civil lawsuit was filed against the Defendant City, all in violation of the Fourth Amendment to the United States Constitution and Article I, Section 8 of the Iowa Constitution, which do not allow the government to seize and maintain possession of private property in order to gain a perceived advantage in a civil matter.

67.     In refusing to relinquish Jones' cell phone the Defendant City of Burlington also violated Iowa law by failing to follow I.C.A. 809.5; and by initially claiming a court order was required before returning the cell phone as set out in an inapplicable code section, I.C.A. 809.3. Only after being threatened with a separate lawsuit did Defendant Burlington relent and turn over the private property of which it had unlawfully maintained possession; however, prior to turning over the cell phone to its rightful owner the Defendant City of Burlington first rendered the cell phone, which was functioning properly at the time of the incident, inoperable.

68.     Defendants Chiprez and Riffel seized Jones by stopping the vehicle Jones was driving, chasing Jones, tackling Jones, firing a service weapon at Jones and killing Jones.  No reasonable person in Jones' position would have believed they were free to leave without being placed under arrest.

69.     All the alleged actions of all of the Defendants were conducted under color of state law.

## COUNT I

### USE OF EXCESSIVE FORCE
### FOURTH AMENDMENT TO THE U.S. CONSTITUTION and
### ARTICLE I, SECTION 8 OF THE IOWA CONSTITUTION –
### AGAINST DEFENDANTS CHIPREZ and CITY OF BURLINGTON

70.     Plaintiffs incorporate paragraphs 1 through 69 above as though fully set forth herein.

71.     Defendant Chiprez's use of excessive force in causing the wrongful death of Marquis Jones was in violation of both the Constitutions of the United States, Fourth Amendment, and the State of Iowa, Article 1, Section 8.   Defendant Chiprez fired his weapon at Jones in an unreasonable, unnecessary and/or reckless manner, resulting in Jones's death.

72.     Defendant Chiprez acting under the color of state law, violated the right of Marquis Jones to be free from the use of excessive force in being placed under arrest, as guaranteed by the Fourth and Fourteenth Amendments to the United States Constitution, as enforced through 42 U.S.C. § 1983, and Article I, Section Eight, of the Iowa Constitution.

73.     Defendant Chiprez proximately caused damages including emotional pain and trauma, past and future to Plaintiffs by the use of excessive force in effectuating the wrongful death of Marquis Jones in violation of rights guaranteed by the Fourth and Fourteenth

Amendments to the United States Constitution and Article I, Section Eight, of the Iowa Constitution.

74.     Defendant City Burlington established a policy, regulation, official decision, custom, or usage, and/or ratified such conduct after the fact, with reckless or deliberate indifference to the rights of persons in the position of Jones and his family.

75.     Defendant Burlington has established, maintained, enforced, and/or ratified policies, regulations, official decisions, customs, or usages which unconstitutionally deprive citizens of the right to be free from the use of excessive while being detained as guaranteed by the Fourth Amendment to the United States Constitution, and Article I, Section 8, of the Iowa Constitution.

76.     Defendant Burlington through its policymakers and managers had actual or constructive knowledge of the use of excessive force by its employees and/or ratified such conduct after the fact.

77.      Jones was subjected to this official policy, regulation, official decision, custom, usage, and/or after-the-fact ratification when he was shot and killed by Defendant Chiprez.

78.     Defendants' policy, regulation, official decision, custom, usage, and/or after-the-fact ratification as against Jones was purposeful and intentional.

79.     Defendants deprived Plaintiffs of the rights guaranteed them under the Fourth Amendment to the United States Constitution, and Section I, Article 8, of the Iowa Constitution, in violation of 42 U.S.C. § 1983, by seizing Jones such that no reasonable person in  Jones's position would have believed they were free to leave without being taken into custody.

80.     Plaintiffs have been damaged as a direct and proximate result of Defendants' acts and omissions, as set out in this Complaint.

81.     Defendant Chiprez acted in a reckless and/or malicious manner subjecting him to punitive damages.

**WHEREFORE,** the Plaintiffs pray for judgment against the Defendants, the City of Burlington and Chris Chiprez individually, in an amount which will fully and fairly compensate them for their injuries and damages; for attorneys' fees; for interest and costs as allowed by law; for punitive damages against Defendant Chiprez; and for such other and further relief as may be just in the premises.

<u>**COUNT II**</u>

<u>**SUBSTANTIVE DUE PROCESS**
**FOURTEENTH AMENDMENT TO THE U.S. CONSTITUTION**
**and ARTICLE I SECTION 9 OF THE IOWA CONSTITUTION –**
**AGAINST DEFENDANTS BURLINGTON AND CHIPREZ**</u>

82.     Plaintiffs incorporate paragraphs 1 through 81 above as though fully set forth herein.

83.     Defendant Chiprez fired his service weapon at Jones in an unreasonable, unnecessary and/or reckless manner, resulting in Jones's death.

84.     At the time Defendant Chiprez fired his service weapon he knew Jones was not a threat because Jones never fired or even pointed his handgun at Chiprez or anyone else.

85.     Defendant Chiprez made the decision to discharge his firearm at Jones when Jones was lying down on his back and attempting to surrender.

86.     Defendant Chiprez made the decision to shoot and kill Jones at a time when waiting or even retreating were clear and viable options.

87.     Defendant Chiprez's actions in firing his weapon at Jones and then falsely claiming Jones was raising his hands at chest level, but that he could not see that Jones no longer

13

was holding a gun in his hands, in order to justify the use of deadly force was so egregious and outrageous as to shock the conscience.

88.     In firing his weapon at Jones Defendant Chiprez acted with deliberate indifference to a significant risk of harm to Plaintiff and did so, at least in part, because Jones was an African American.

89.     In firing his weapon at Jones Defendant Chiprez acted with the specific intent to cause harm.

90.     Defendant Chiprez acted under the color of state law, violated the right of Marquis Jones to substantive due process as guaranteed by the Fourteenth Amendment to the United States Constitution, as enforced through 42 U.S.C. § 1983, and Article I, Section 9 of the Iowa Constitution.

91.     The Defendant City of Burlington violated the right of Marquis Jones to substantive due process as guaranteed by the Fourteenth Amendment to the United States Constitution, as enforced through 42 U.S.C. § 1983, and Article I, Section 9 of the Iowa Constitution by engaging in a cover up of Defendant Chiprez's wrongful conduct.

92.     Plaintiffs have been damaged as a direct and proximate result of Defendants' acts and omissions, as set out in this Complaint.

**WHEREFORE,** the Plaintiffs pray for judgment against the Defendants City of Burlington and Chris Chiprez individually, in an amount which will fully and fairly compensate them for their injuries and damages; for attorneys' fees; for interest and costs as allowed by law; for punitive damages against Defendant Chiprez; and for such other and further relief as may be just in the premises.

**COUNT III**

**ARREST WITHOUT PROBABLE CAUSE**
**FOURTH AMENDMENT TO THE U.S. CONSTITUTION**
**and ARTICLE I, SECTION 8 OF THE IOWA CONSTITUTION**
**AGAINST ALL DEFENDANTS**

93.    Plaintiffs incorporate paragraphs 1 through 92 above as though fully set forth herein.

94.   Defendants had no legitimate reason to stop Jones in the first place because they did not see his vehicle at the time they heard the loud music and there was no loud music at the time they decided to stop Jones' vehicle.

95.    Defendants acted unreasonably by stopping Jones for "driving while black."

96.    Defendants acted unreasonably by using deadly force in order to seize Jones when no such force was justified.

97.    The Defendants, acting under the color of state law, violated the right of Jones to be free from unreasonable seizure as guaranteed by the Fourth Amendment to the United States Constitution, enforced through 42 U.S.C. § 1983, and Article I, Section 8, of the Iowa Constitution.

98.    The Defendants proximately caused damages to Plaintiffs by unlawfully and without a proper basis to do so, stopping his vehicle and seizing him in violation of his rights guaranteed by the Fourth Amendment to the United States Constitution, as enforced through 42 U.S.C. § 1983, and Article I, Section 8, of the Iowa Constitution,.

**WHEREFORE,** the Plaintiffs pray for judgment against the Defendants in an amount which will fully and fairly compensate them for their injuries and damages; for attorneys' fees;

for interest and costs as allowed by law; for punitive damages against Defendants Chiprez and Riffel; and for such other and further relief as may be just in the premises.

## COUNT IV

### RACE DISCRIMINATION
### THIRTEENTH AMENDMENT U.S. CONSTITUTION and
### ARTICLE I, SECTION 23 of the IOWA CONSTITUTION
### AGAINST ALL DEFENDANTS

99.     Plaintiffs incorporate paragraphs 1 through 98 above as though fully set forth herein.

100.    Jones, an African American, was treated differently than a White citizen of the United States of America and the State of Iowa would have been treated under similar circumstances in that he was racially profiled, stopped and subjected to excessive force that a White citizen would not have been subjected to for engaging in similar conduct.

101.    The Defendants acting under the color of state law violated the right of Jones to be free from racial profiling and discrimination as guaranteed by the Thirteenth Amendment to the United States Constitution and Article I, Sections 1 and 23, of the Iowa Constitution; and 42 U.S.C. §§1981 and 1982.

102.    The Defendants proximately caused damages to Jones by unlawfully and discriminatorily treating him in violation of the rights guaranteed by the Thirteenth Amendment to the United States Constitution and Article I, Section 23 of the Iowa Constitution; and 42 U.S.C. §§1981 and 1982.

103.    The Defendant City of Burlington has a pattern or practice established by custom or acquiescence to allow such conduct and/or ratified such conduct after the fact.

    **WHEREFORE,** the Plaintiffs pray for judgment against the Defendants in an amount which will fully and fairly compensate them for their injuries and damages; for

attorneys' fees; for interest and costs as allowed by law; for punitive damages against Defendant

Chiprez and Riffel; and for such other and further relief as may be just in the premises.

## COUNT V

### IMPROPER SEIZURE
### FOURTH AMENDMENT TO THE U.S. CONSTITUTION and
### ARTICLE I, SECTION 8 OF THE IOWA CONSTITUTION
### AGAINST DEFENDANT CITY OF BURLINGTON and
### JOHN DOE DEFENDANTS 1 AND 2

104.   Plaintiffs incorporate paragraphs 1 through 103 above as though fully set forth

herein.

105.   Defendants, Burlington and John Doe 1 and 2, had no legitimate reason to

maintain possession of Jones' cell phone upon completion of the criminal investigation into his

death.

106.    Defendants acted unreasonably by refusing to return the cell phone to its rightful

owners even after repeated requests.

107.   On the date Jones was killed, October 1, 2017, the cell phone was delivered to the

possession of the Des Moines County Sheriff's Department in operational condition, but with a

broken screen.

108.   On October 3, 2017, at the request of Defendants Burlington and John Doe 1

and/or 2 the custody of the cell phone was transferred to Burlington.

109.   The cell phone was in operating condition at the time the Defendants took

possession of the cell phone.

110.   Defendants acted unreasonably by attempting to open and retrieve information

from the cell phone without a court order authorizing the search.

111.   Defendants acted unreasonably by rendering the cell phone inoperable prior to

returning it to its rightful owner.

112.   Defendants, acting under the color of state law, violated the right of Jones to be free from unreasonable search as guaranteed by the Fourth Amendment to the United States Constitution, enforced through 42 U.S.C. § 1983, and Article I, Section 8, of the Iowa Constitution.

113.   Defendants proximately caused damages to Plaintiffs by unlawfully and without a proper basis to do so, seizing and attempting to search Jones' cell phone; initially refusing to return it; failing to follow applicable law for property seizure; and rendering the cell phone inoperable prior to returning it to its rightful owner; all in violation of Plaintiffs rights guaranteed by the Fourth Amendment to the United States Constitution, as enforced through 42 U.S.C. § 1983, and Article I, Section 8 of the Iowa Constitution.

114.   The individual agents of Defendant Burlington who wrongfully and unconstitutionally acted as set out above are at this time unknown to Plaintiffs and have been identified as John Doe Defendants 1 and 2 in this complaint.  Any and all individual agents of Defendant Burlington identified during discovery as being involved in the wrongful and unconstitutional conduct identified above will be added as individual defendants to this cause of action.

**WHEREFORE,** the Plaintiffs pray for judgment against the Defendants City of Burlington and John Doe 1 and 2 in an amount which will fully and fairly compensate them for their injuries and damages; for attorneys' fees; for interest and costs as allowed by law; for punitive damages against John Doe Defendants 1 and 2; and for such other and further relief as may be just in the premises.

### COUNT VI

**WRONGFUL DEATH – NEGLIGENCE - IOWA LAW**
**AGAINST DEFENDANTS CHIPREZ AND CITY OF BURLINGTON**

115.   Plaintiffs incorporate paragraphs 1 through 114 above as though fully set forth herein.

116.   Defendant Chiprez owed Plaintiffs a duty to act reasonably in the use of deadly force; to conform to an objectively reasonable standard of conduct regarding when, where and under what circumstances use of deadly force is warranted; and to not deprive Jones of his inalienable rights to enjoy and defend his life, and pursue and obtain safety and happiness in accord with Article I, Section 1, of the Iowa Constitution.

117.   Defendant Chiprez breached that duty by discharging his service weapon at Jones when Jones did not pose an imminent threat to Chiprez or anyone else.

118.   Defendant City of Burlington owed Plaintiffs a duty to have in place reasonable policies and procedures regarding the use of deadly force, and/or to properly train and supervise its police officers, including Defendant Chiprez, in an objectively reasonable standard of conduct regarding when, where and under what circumstances use of deadly force is warranted; and/or to not cover up the wrongful conduct of its police officers in an attempt to avoid responsibility for that wrongful conduct.

119.   Defendant City of Burlington breached those duties by not having in place reasonable policies and procedures regarding the use of deadly force, and/or by failing to properly train and/or supervise Defendant Chiprez regarding the appropriate use of deadly force; and/or by attempting to cover up and mislead the public about Defendant Chiprez's wrongful conduct; and/or by ratifying the wrongful conduct after the fact.

120.   The Defendant City of Burlington is responsible for the conduct of Chiprez under

*respondeat superior.*

121. The Defendants breach of duty owed caused injuries and damages to the Plaintiffs including the wrongful death of Jones, the loss of adult child consortium for Williams and parental loss of consortium for the Jones' children.

122. At all times relevant hereto Defendant Chiprez acted as an agent of Defendant City of Burlington and within the scope of his authority as a police officer.

123. In the alternative, should Defendants claim immunity and/or qualified immunity for acts within the scope of his authority Plaintiffs plead that he acted outside that scope of authority.

124. Defendant City of Burlington ratified the conduct of Defendant Chiprez after he took the actions complained of in this complaint.

**WHEREFORE,** the Plaintiffs pray for judgment against the Defendants Burlington and Chris Chiprez in an amount which will fully and fairly compensate them for their injuries and damages; for attorneys' fees; for interest and costs as allowed by law; for punitive damages against Defendant Chiprez; and for such other and further relief as may be just in the premises.

## <u>COUNT VII</u>

### <u>LOSS OF CONSORTIUM – ALTOVESE WILLIAMS, individually<br>and as Next friend of B.B.D., M.R.J., P.D.J., M.RJ., II , and M.R.H.<br>AGAINST DEFENDANTS CHIPREZ AND CITY OF BURLINGTON</u>

125. Plaintiffs incorporate paragraphs 1 through 124 above as though fully set forth herein.

126. Altovese is the natural mother and administrator of the Estate of Marquis Jones.

127. B.B.B., M.R.J., P.D.J., M.R.J., II, and M.R.H. are minors and are the natural children of Marquis Jones.

128.     Altovese brings this claim on her own behalf and as next friend of B.B.D.,

M.R.J., P.D.J., M.R.J., II., and M.R.H., pursuant to Iowa Code 1.210 and *Madison v. Colby*, 348

N.W.2d 202, 207 (Iowa 1984).[1]

129.     Since Marquis' death, Altovese, B.B.D., M.R.J., P.D.J., M.R.J., II., and M.R.H.

have suffered loss of aid, companionship, cooperation, and affection of Marquis Jones.

130.     As a result of said losses, Altovese, B.B.D., M.R.J., P.D.J., M.R.J., II, and M.R.H.

have been damaged.

131.     The Defendants are liable to Altovese, B.B.D., M.R.J., P.D.J., M.R.J., II, and

M.R.H. for their losses of consortium.

132.     The losses of Altovese, B.B.D., M.R.J., P.D.J., M.R.J., II, and M.R.H. are

individual and separate from the losses sustained by the Estate of Marquis Jones as the result of

his death caused by the wrongful conduct of the Defendants.

   **WHEREFORE**, Plaintiffs pray for judgment against Defendants Chiprez and the City of

Burlington in an amount sufficient to fairly and adequately compensate them for their injuries,

losses and damages, for attorneys' fees, for interest and costs as allowed by law; for punitive

damages against Defendant Chiprez; and for such other and further relief as the Court deems

appropriate.

## COUNT VIII

## CONSPIRACY TO COVER UP WRONGFUL CONDUCT
## AGAINST ALL DEFENDANTS

133.    Plaintiffs incorporate paragraphs 1 through 132 above as though fully set forth

herein.

---

[1] "Authority to sue under section 613.15 passed to the administrator but, under section 633.336, the recovery was to be apportioned to the spouse and children of the decedent in accordance with their loss."

134.    42 U.S.C. § 1985 makes it unlawful for two or more parties to conspire to deny constitutional rights, privileges and immunities to citizens, including equal protection and race-based animus.

135.    The Defendants have conspired to cover up the wrongful and unconstitutional conduct of Defendants Chiprez and Riffel by refusing to disclose the facts and circumstances of the death of Marquis Jones and misleading the public about the justification for shooting and killing Jones.

136.    The Burlington Police Department, through its agents including John Doe Defendants 1 and 2, has a history of editing and selectively releasing audio/video in order to conceal wrongful conduct by its officers.  Defendants released only portions of the video of the subject matter incident selected in order to put Chiprez's and Riffel's conduct in the best light possible.

137.    In addition to refusing numerous requests for Jones' cell phone until threatened with a separate lawsuit, the Defendants specifically and unlawfully refused an open records request from the family of Marquis Jones for all audio, video, reports and investigative files of the death of Jones.

138.    Even after the Iowa Supreme Court issued a recent decision noting that "'[t]here is a presumption in favor of disclosure' and 'a liberal policy in favor of access to public records.' *Hall v. Broadlawns Med. Ctr.*, 811 N.W.2d 478, 485 (Iowa 2012). 'Disclosure is the rule, and one seeking the protection of one of the statute's exemptions bears the burden of demonstrating the exemption's applicability.' *Diercks*, 806 N.W.2d at 652 (quoting *Clymer v. City of Cedar Rapids*, 601 N.W.2d 42, 45 (Iowa 1999))." *Mitchell v. Cedar Rapids*, No. 18-0124, filed April 4, 201, pp. 10-11, Defendants refused to release records covered by the *Mitchell* holding.

139.    Defendants refused to release "any investigative reports or electronic communication generated or filed within 96 hours of the incident, but does not apply to reports or memorandum generated solely for purposes of a police internal review of the incident," as held by the Iowa Supreme Court in *Mitchell*. At p. 6.

140.    Defendants refused to provide a privilege log identifying what records it was refusing to release and then attempted to put the burden on Plaintiffs to "provide the City with the public interest(s) disclosure of such records would serve," without identifying the records, all in violation of Iowa law and the holding in *Mitchell*.

141.    Defendants claimed the exclusive right to determine what records are to be produced, contrary to the holding in *Mitchell*, stating that the City "will weigh the public interests identified by you against the public interest(s) that would suffer by disclosure."

142.    Finally, Defendants claimed that its agent alone will "identify any records weighing in favor of disclosure to you and provide with you [*sic*] the reasonable fee for the actual cost of providing copies of such records," in violation of  Iowa law and the holding in *Mitchell*.

143.    Defendant Burlington intentionally delays the freedom of information act process and files unnecessary and frivolous appeals of orders to release information for the purpose of covering up the wrongful conduct of its police officers.

144.    Defendants reached an agreement to cover up all wrongful conduct of law enforcement officers employed by the City of Burlington and to deny the class of individuals, particularly those of African descent, and those subjected to wrongful race-based conduct by Burlington police officers, equal protection under the law and privileges and immunities under the law.

145.   Defendants proximately caused damages to Plaintiffs by conspiring to deny access to the facts and circumstances surrounding the death of Marquis Jones without a proper basis to do so in violation of 42 U.S.C. § 1985.

146.   The individual agents of Defendant Burlington conspired and agreed to keep the public from being informed of the wrongful and unconstitutional conduct of Defendants Chiprez and Riffel; and routinely conspire to cover up all wrongful conduct by Defendant Burlington's law enforcement officers particularly involving wrongdoing inflicted upon racial minorities such as Marquis Jones.

**WHEREFORE,** the Plaintiffs pray for judgment against the Defendants in an amount which will fully and fairly compensate them for their injuries and damages; for attorneys' fees; for interest and costs as allowed by law; for punitive damages against the individual Defendants; and for such other and further relief as may be just in the premises.

## COUNT IX

### VIOLATION OF OPEN RECORDS LAWS
### INCLUDING ARTICLE I, SECTION 2 of the IOWA CONSTITUTION
### AGAINST DEFENDANT CITY OF BURLINGTON

147.   Plaintiffs incorporate paragraphs 1 through 147 above as though fully set forth herein.

148.   Burlington police officer Jesse Hill shot and killed Autumn Steele on January 6, 2015.

149.   A public records request for information regarding the shooting death of Autumn Steele was made soon after her death.

150.   The public records request for information regarding the death of Autumn Steele has now been pending for over four years without the City of Burlington releasing any information pursuant to that request and despite numerous orders entered requiring it to do so.

151.   The County Attorney for Des Moines County was fined for refusing to comply with an order to release the records at the request of the Defendant City of Burlington.

152.   Rather than release the records the Defendant City of Burlington has chosen to repeatedly file appeals and delay the release of the records.

153.   The Defendant City of Burlington has participated in a political process to replace members of the Iowa Public Information Board ("IPIB") tasked with ensuring that government records are made public, with individuals whose goal is to maintain government secrets in violation of Iowa's public information disclosure laws.

154.   This political process has gone so far as to replace the IPIB board slot reserved by law for a journalist with an individual who is not a journalist.

155.   The tactics of the City of Burlington along with others intent on keeping government wrongdoing secret have made it fruitless and impossible to properly enforce Iowa's open records laws.

156.   The City of Burlington should be immediately required to release all information regarding the shooting death of Marquis Jones in compliance with the holding of the Iowa Supreme Court in *Mitchell v. Cedar Rapids*, No. 18-0124, filed April 4, 2019.

157.   The Defendant City of Burlington has acted in violation of Article I, Section 2, of the Iowa Constitution, requiring that "[a]ll political power is inherent in the people. Government is instituted for the protection, security, and benefit of the people, and they have the right, at all times, to alter or reform the same, whenever the public good may require it."

**WHEREFORE,** the Plaintiffs pray for an Order from this Court requiring the Defendant City of Burlington to publicly release all records regarding the shooting death of Marquis Jones in compliance with *Mitchell v. Cedar Rapids*, No. 18-0124, filed April 4, 201; for attorneys' fees; for interest and costs as allowed by law; and for such other and further relief as may be just in the premises.

### JURY DEMAND

The Plaintiffs, Altovese Williams, individually, as Administrator of the Estate of Marquis Jones, and as next of Friend for B.B.D., M.R.J., P.D.J., M.R.J., II, and M.R.H. respectfully request a trial by jury on all legal claims raised by their Complaint.

Respectfully submitted,

**DAVE O'BRIEN LAW**
1500 Center Street NE
Cedar Rapids, Iowa 52402
Telephone:  (319) 861-3001
Facsimile:  (319) 861-3007
E-mail: dave@daveobrienlaw.com

By:  /s/ David A. O'Brien
        DAVID A. O'BRIEN, AT0005870

**CROWLEY & PRILL**
3012 Division Street
Burlington, Iowa 52601
Phone:   319.753.1330
Fax:        319.752.3934
Email:      amahoney@cbp-lawyers.com

By:  /s/ Andrew L. Mahoney
        ANDREW L. MAHONEY AT0012329

**ATTORNEYS FOR PLAINTIFFS**

**Original Filed.**