**IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF IOWA
DAVENPORT DIVISION**

| | |
|---|---|
| **ALTOVESE WILLIAMS, individually, and as Administrator of the Estate of Marquis Jones, and as next of Friend for Minors B.B.D., M.R.J., Jr., D.K.J., M.R.J, III, and M.R.H.,** | **Case No. 3:19-cv-00043** |
| **Plaintiffs,** | |
| **v.** | **SECOND AMENDED AND SUBSTITUTED COMPLAINT AND JURY DEMAND** |
| **CITY OF BURLINGTON and CHRIS CHIPREZ,** | |
| **Defendants.** | |

**COMES NOW** the Plaintiffs, Altovese Williams, individually and as Administrator of the Estate of Marquis Jones, and as next friend of B.B.D., M.R.J., Jr., D.K.J., M.R.J, III, and M.R.H. and for their Complaint and Jury Demand against Defendants, City of Burlington and Chris Chiprez, state to the Court as follows:

<u>**INTRODUCTION**</u>

1.      This is an action brought to redress the deprivation – under color of policy, regulation, official decision, custom or usage – of rights secured to Plaintiff by 42 U.S.C. § 1983 and §1985 arising under the Second and Fourth Amendments, incorporated to the states through the Fourteenth Amendment to the United States Constitution, and the Constitution of the State of Iowa, Article I, Sections 1, 2, 8, 9 and 23; and includes Iowa common law negligence, loss of consortium and public records disclosure claims.

## JURISDICTION

2.      Jurisdiction is conferred to this Court through 28 U.S.C. §§1331 and 1343 and venue is appropriate in this district under 28 U.S.C. § 1391(b).

3.      All the unlawful acts alleged herein occurred at in Des Moines County, Iowa, on or about October 1, 2017, except for the long, sordid and ongoing efforts of the City of Burlington covering up the wrongful conduct of its police officers.  See *Hawk Eye v. Jackson*, 521 N.W.2d 750 (Iowa 1994), *Steele v. Burlington*, U.S. District Court, Northern District of Iowa, 3:16-cv-00105-JEG-SBJ, Doc. 95, filed August 14, 2018 and *Klein v. Iowa Public Information Board*, Petition for Judicial Review under I.C.A. §17A.19, Iowa District Court for Polk County, Case No. CV 057831, filed March 22, 2019.

## PARTIES

4.      At all times material hereto, Altovese Williams (hereinafter referred to as "Williams") was a resident of Des Moines County, IA.  Williams is also the mother of Marquis Jones and the Personal Representative of the Estate of Marquis Jones, deceased (herein after referred to as "Jones") who was a citizen and resident of Des Moines County, Iowa.  Williams is also the Next of Friend for the minor children of Marquis Jones, B.B.D., M.R.J., Jr., D.K.J., M.R.J, III and M.R.H.

5.      The Defendant City of Burlington includes a police department and other administrative agencies (hereinafter referred to as "Burlington") which employs Defendant Chris Chiprez, whom they failed to properly train, or monitor, and to compensate for the lack of expertise, training and oversight, Burlington intentionally covers up wrongdoing by its police officers.

6.      Defendant Chris Chiprez (hereinafter referred to as "Chiprez") was at all times material hereto an employee of the City of Burlington, Iowa, violated Jones' constitutional rights and ultimately caused the wrongful death of Jones using excessive force.

## FACTUAL BACKGROUND

7.      Jones was born on May 23, 1990 and was 27 years old at the time he was killed by Defendant Chiprez on or about October 1, 2017.

8.      On October 1, 2017 at 1:50 pm, Jones was followed by Chiprez and another Burlington Police Officer, Joshua Riffel, for allegedly playing loud music and was ultimately pulled over even though the music was turned down for over three blocks prior to the traffic stop.

9.      Defendant Chiprez chose to follow and stop Jones because Jones was African American.

10.     At the time, Chiprez chose to follow and stop Jones, he had no reason to believe that Jones had any outstanding warrants for arrest, that Jones was carrying any contraband or that Jones was not permitted to carry a handgun in the State of Iowa under I.C.A. 724.4(4)(i) and 724.7, and as guaranteed under the Second Amendment to the U.S. Constitution.  See *District of Columbia v. Heller*, 554 U.S. 570 (2008).

11.     After stopping his vehicle, Jones, for reasons that are unknown, got out of the car and began running away with a black bag in his hand.

12.     After Jones was killed, the black bag he was carrying was found to contain marijuana, a substance now legal for recreational use in 11 states plus the District of Columbia, and readily available for legal purchase in 22 other states with liberal medical marijuana and/or decriminalization laws.  Marijuana is only fully illegal in 8 states.

13.     The pursuit of Jones began with Defendant Chiprez in pursuit on foot and Riffel pursuing in a police cruiser.

14.     Riffel's police cruiser was equipped with audio/video recording and Defendant Chiprez was wearing a body cam.  Riffel was also wearing a body cam, but allegedly did not turn it on until later in the pursuit after engaging Jones in a physical scuffle.

15.     At some point Riffel left the cruiser and chased Jones on foot.

16.     Riffel caught and tackled Jones in the street.

17.     Riffel later claimed to have observed that Jones had a gun in his right hand.

18.     Jones carried a gun for protection since a friend of his was murdered.  Jones kept the gun in the elastic waist band of compression shorts he wore. The gun fell to the ground at the time Riffel tackled Jones.

19.     Chiprez observed Jones pick a gun up from the street as he rounded the corner of Maple and S. 7th St. and saw Riffel running away from Jones heading south on 7th St.

20.     Neither Riffel nor Defendant Chiprez claimed that Jones fired his gun or even pointed his gun in their direction or at anyone else.

21.     After discussing the incident with the Burlington Chief of Police and Chiprez, Riffel claimed to have observed a gun in Jones' right hand and that he grabbed Jones' right arm with his left hand and a struggle ensued.

22.     Riffel is left-handed and claims he could not reach his weapon located on his left hip because he was using his left hand to hold onto Jones' right arm.

23.     Riffel claims to have realized that he could not control Jones and made the tactical decision to retreat from the altercation.

24. In order to create space between himself and Jones, Riffel had to let go of Jones' right arm and hand, the hand in which Jones was allegedly carrying a gun.

25. Jones had a clear opportunity at the time Riffel retreated from their physical altercation to shoot at Riffel or aim his gun at Riffel and he did not do so. Instead, Jones continued to retreat by running away and attempting to avoid any contact with the Riffel or Defendant Chiprez.

26. Riffel allegedly only turned on his body cam after the physical struggle with Jones.

27. After retreating from the physical altercation with Jones, Riffel informed Defendant Chiprez via radio that Jones had a gun, stating only "gun, gun, he's got a gun, Chip." Riffel at the time said nothing about any struggle with Jones in any effort to allegedly control the hand in which Jones was holding the gun or that he felt Jones was trying to point the gun in his direction.

28. Riffel has never claimed that Jones fired the gun at him or anyone else.

29. Riffel did not inform Defendant Chiprez at the time of the incident that Jones pointed the gun at him or anyone else or attempted to point the gun at him or anyone else.

30. Defendant Chiprez continued to chase Jones on foot and had no difficulty confirming the allegation that Jones had a gun in his right hand stating it "was clearly visible" while Jones was running away.

31. While chasing Jones, Defendant Chiprez told Jones to "drop it, drop it," but gave Jones no opportunity to follow his command before firing at Jones within a second of giving the command.

32. At the time he fired the first seven shots at Jones, Chiprez had no reason to believe that Jones had taken any action with the gun that threatened anyone else. All Chiprez knew was

that Jones had a gun in his possession and was running away, which in Chiprez's mind, but not legally, was sufficient grounds to inflict deadly force upon Jones.

33.     Defendant Chiprez fired seven shots at Jones in a span of 4-5 seconds without ever noting that Jones fired his gun or even pointed his gun in the direction of Chiprez, Riffel or anyone else.  In addition, Chiprez fired seven shots in Jones direction knowing that occupied structures were in his line of fire in this neighborhood of closely clustered homes.

34.     At no point while Jones was running away from Defendant Chiprez did he turn toward Chiprez or reach back with his right arm, holding the gun, in Chiprez's direction.  Despite being shot at seven times, Jones did not return fire or point his gun at Chiprez or Riffel or anyone else in any way and just continued to attempt to run away.

35.     While running away and when Chiprez ordered Jones to drop the gun, Jones complied with the order and dropped the gun.

36.     Defendant Chiprez and officer Riffel continue to chase Jones and Defendant Chiprez eventually was able to see Jones lying down in an adjacent backyard.

37.     At this point, Defendant Chiprez claimed to see Jones starting to rise and yelled "stop," but again gave Jones no opportunity to follow his order by firing the fatal shot at Jones in less than a second after yelling stop.

38.     Defendant Chiprez claims that Jones started to rise, "making a motion with his hands at chest level," but was unable to determine if Jones was still holding the gun that was previously clearly visible even though the alleged movement of Jones's hands at chest level was also clearly visible at the time.

39.     Defendant Chiprez claims that Jones' torso was perpendicular to the ground at the time the last deadly shot was filed, but this claim is contradicted by the autopsy report which

establishes that Jones' was facing Chiprez with his torso at a more than 45-degree angle forward toward Chiprez when the last shot was fired.  That shot struck Jones in the front upper right of center chest area and exiting 11.5 inches below in the left lower back area.

40.     Jones was trying to surrender at the time he was shot and killed by Defendant Chiprez.

41.     Defendant Chiprez never gave Jones the opportunity to surrender before shooting and killing him.

42.      Defendant Chiprez did not have sufficient training, experience and/or expertise in dealing with fleeing suspects who were believed to be armed but attempting to surrender.

43.     Defendant Chiprez failed to follow protocol by shooting and killing Jones even though Jones never fired his gun, nor did he ever point his gun at Chiprez or anyone else.

44.     It is legal in the State of Iowa to carry a handgun with a permit and at the time Chiprez fired shots at Jones and ultimately shot and killed Jones for carrying a gun, Chiprez had no reason to believe that Jones did not have the necessary permit to carry a gun in the State of Iowa. See I.C.A. 724.4(4)(i) and 724.7.

45.     At all times during the confrontation, Defendant Chiprez and Officer Riffel were the aggressors – following, stopping, chasing, tackling, shooting at and ultimately killing Jones, who never once engaged in any act of aggression towards Defendant Chiprez or Officer Riffel.

46.     At the time Defendant Chiprez shot and killed Jones, Chiprez had no legitimate reason to believe Jones had committed any crime other than allegedly violating a city noise ordinance and that was a pretextual reason for stopping an African American.

47.     At the time Defendant Chiprez shot and killed Jones, Chiprez had no legitimate reason to believe Jones used or threatened to use deadly force in committing a felony.

48.     At the time Defendant Chiprez shot and killed Jones, Chiprez had no legitimate reason to believe Jones was a threat to inflict bodily harm on himself or any other person.

49.     At the time Defendant Chiprez shot and killed Jones, Chiprez had no legitimate reason to believe Jones would use deadly force against any person unless immediately arrested.

50.     At the time Defendant Chiprez shot and killed Jones, Chiprez used more force than a reasonable officer would use in like circumstances, including Defendant Riffel, who never fired his service weapon at Jones.

51.     At the time Defendant Chiprez shot and killed Jones, Chiprez had no legitimate reason to believe that such force was necessary to avoid injury or risk to one's safety or the life or safety of another or that such force was necessary in order to resist a like force or threat.

52.     At the time Defendant Chiprez shot and killed Jones, Chiprez had no legitimate reason to defend himself or another from any actual or imminent use of unlawful force by Jones.

53.     At the time Chiprez shot and killed Jones, Chiprez had no legitimate reason to believe Jones posed a threat or menace of serious injury to himself or another that could only be averted by shooting and killing Jones.

54.     Chiprez's stated reason for killing Jones, claiming he believed Jones had a gun and was pointing it at him, is proven false by the body cam video of the incident, which establishes that neither Chiprez, Riffle nor any other officer spent even one second of time scouring the area around Jones' body looking for a gun that was allegedly present, but not readily visible; both Chiprez and Riffel responded in the past tense "he did," when asked if Jones had a gun; that when asked where the gun was Chiprez responded by shrugging his shoulders and Riffel pointed back to where Jones dropped the gun approximately 50 yards away; Lt. Schaeffer, senior officer on the scene, wrote in his report that when he asked where the gun was he was informed "it was at another

location;" and when told to go find the gun neither Chiprez nor Riffel spent even one second of time looking for the gun in the backyard where Jones was, nor in the alley that Jones ran across, nor in the trash cans that Jones ran past, nor in the backyard of the house next to the alley that Jones ran thru, but instead walked right back to where Jones was located when Chiprez ordered him to drop the gun – and right where the gun was located.

55.    Jones' prior production, display or brandishing of a gun alone was not sufficient grounds for Chiprez to respond by using deadly force because Jones took no action that created a reasonable expectation that he may use deadly force to defend himself.  In fact, Jones' conduct during the incident created a reasonable expectation that all he wanted to do was retreat and avoid a confrontation with Defendant Chiprez and Officer Riffel.

56.    Defendant Chiprez and Officer Riffel had other available means to capture Jones without using deadly force.

57.    At the time Defendant Chiprez shot and killed Jones, no reasonable officer with knowledge of the facts Chiprez knew or should have known at the time, would have concluded Jones was a fleeing felon.

58.    At the time Defendant Chiprez shot and killed Jones, no reasonable officer with knowledge of the facts Chiprez knew or should have known at the time, would have concluded Jones posed a threat to human life.

59.    At the time Defendant Chiprez shot and killed Jones, no reasonable officer with knowledge of the facts Chiprez knew or should have known at the time, would have concluded Jones posed a threat of immediate danger of serious physical injury to another.

60.    273,852 Iowans held open/conceal carry permits for guns in 2017.   See https://www.gunstocarry.com/concealed-carry-statistics/.  In 2017 the population of the State of

Iowa was 3.146 million people.  See https://www.census.gov/quickfacts/ia.  At the time Defendant

Chiprez shot and killed Jones for carrying, not shooting or even pointing the gun at anyone, roughly

one out of every dozen Iowans were licensed to open/conceal carry a gun.

61.   Defendant Chiprez did not act as an objectively reasonable officer would have acted

under the circumstances given that he used deadly force when not faced with an imminent threat

of significant injury or death.

62.   Defendant Chiprez's stated justification for shooting and killing Jones would apply

equally to any of the 273,852 Iowans with permits to open/conceal carry guns who did nothing

more than run away from Chiprez after he attempted to stop them.

63.   Defendant City of Burlington failed to properly train Chiprez; and/or failed to

properly monitor and oversee Chiprez's activities as law enforcement officers.

64.   Defendant City of Burlington's General Orders on Use of Deadly force applicable

at the time Chiprez chose to shoot and kill Jones were outdated and not in compliance with Iowa

law.

65.   Because of the manner in which Defendant City of Burlington handled the shooting

death of Autumn Steele by police officer Jesse Hill in 2015, Defendant Chiprez was aware that he

could use excessive force to kill Jones without concern of being charged criminally, without

suffering any adverse employment consequences and that Defendant City of Burlington would

make every effort to cover up his wrongful conduct.

66.   The City of Burlington has a history of covering up wrongful conduct by its law

enforcement officers including by fighting release of police video and reports in violation of

Iowa's open records laws; editing video downloaded from body cams; ignoring inculpatory

evidence when drafting investigative reports of alleged wrongdoing by officers; releasing video to

the public edited to exclude inculpatory evidence of police officer wrongful conduct; and participating in the publication of false narratives to the public in order to conceal the wrongful conduct of its officers.

67.     In this case, the Defendant City of Burlington participated in an attempt to cover up the wrongful conduct of Defendant Chiprez by releasing only a selected portion of the available audio/video of the incident; refusing to release investigative reports of the incident even those generated or filed within 96 hours of the incident; refusing to release interview transcripts and other records regarding the shooting and killing of Jones; and refusing, in violation of Iowa law, an open records request for such information.

68.     In this case, the Defendant City of Burlington participated in further wrongful acts by initially refusing to turn over Jones' cell phone to its rightful owner at the completion of the criminal investigation of the case, for the specifically stated purpose of keeping possession of the cell phone in the event a civil lawsuit was filed against the Defendant City, all in violation of the Fourth Amendment to the United States Constitution and Article I, Section 8 of the Iowa Constitution, which do not allow the government to seize and maintain possession of private property in order to gain a perceived advantage in a civil matter.

69.     In refusing to relinquish Jones' cell phone the Defendant City of Burlington also violated Iowa law by failing to follow I.C.A. 809.5; and by initially claiming a court order was required before returning the cell phone as set out in an inapplicable code section, I.C.A. 809.3. Only after being threatened with a separate lawsuit did Defendant City of Burlington relent and turn over the private property of which it had unlawfully maintained possession.

70.     Defendant Chiprez seized Jones by stopping the vehicle Jones was driving, chasing Jones, firing a service weapon at Jones and killing Jones.  No reasonable person in Jones' position would have believed they were free to leave without being placed under arrest.

71.     All the alleged actions of all of the Defendants were conducted under color of state law.

## COUNT I

### USE OF EXCESSIVE FORCE
### FOURTH AMENDMENT TO THE U.S. CONSTITUTION and
### ARTICLE I, SECTION 8 OF THE IOWA CONSTITUTION –
### AGAINST DEFENDANTS CHIPREZ and CITY OF BURLINGTON

1-71.   Plaintiffs incorporate paragraphs 1 through 71 above as though fully set forth herein.

72.     Defendant Chiprez's use of excessive force in causing the wrongful death of Marquis Jones was in violation of both the Constitutions of the United States, Fourth Amendment, and the State of Iowa, Article 1, Section 8.   Defendant Chiprez fired his weapon at Jones in an unreasonable, unnecessary and/or reckless manner resulting in Jones's death.

73.     Defendant Chiprez, acting under the color of state law, violated the right of Marquis Jones to be free from the use of excessive force in being placed under arrest, as guaranteed by the Fourth and Fourteenth Amendments to the United States Constitution, as enforced through 42 U.S.C. § 1983, and Article I, Section Eight, of the Iowa Constitution.

74.     Defendant Chiprez proximately caused damages including emotional pain and trauma, past and future to Plaintiffs by the use of excessive force in effectuating the wrongful death of Marquis Jones in violation of rights guaranteed by the Fourth and Fourteenth Amendments to the United States Constitution and Article I, Section Eight, of the Iowa Constitution.

75.     Defendant City of Burlington established a policy, regulation, official decision, custom or usage and/or ratified such conduct after the fact, with reckless or deliberate indifference to the rights of persons in the position of Jones and his family.

76.     Defendant City of Burlington has established, maintained, enforced and/or ratified policies, regulations, official decisions, customs or usages, which unconstitutionally deprive citizens of the right to be free from the use of excessive while being detained as guaranteed by the Fourth Amendment to the United States Constitution, and Article I, Section 8, of the Iowa Constitution.

77.     Defendant City of Burlington through its policymakers and managers had actual or constructive knowledge of the use of excessive force by its employees and/or ratified such conduct after the fact.

78.     Jones was subjected to this official policy, regulation, official decision, custom, usage and/or after-the-fact ratification when he was shot and killed by Defendant Chiprez.

79.     Defendants' policy, regulation, official decision, custom, usage and/or after-the-fact ratification as against Jones was purposeful and intentional.

80.     Defendants deprived Plaintiffs of the rights guaranteed them under the Fourth Amendment to the United States Constitution, and Section I, Article 8, of the Iowa Constitution, in violation of 42 U.S.C. § 1983, by seizing Jones such that no reasonable person in Jones' position would have believed they were free to leave without being taken into custody.

81.     Plaintiffs have been damaged as a direct and proximate result of Defendants' acts and omissions as set out in this Complaint.

82.     Defendant Chiprez acted in a reckless and/or malicious manner subjecting him to punitive damages.

13

**WHEREFORE,** the Plaintiffs pray for judgment against the Defendants, the City of Burlington and Chris Chiprez individually, in an amount which will fully and fairly compensate them for their injuries and damages; for attorneys' fees; for interest and costs as allowed by law; for punitive damages against Defendant Chiprez; and for such other and further relief as may be just in the premises.

<u>**COUNT II**</u>

<u>**SUBSTANTIVE DUE PROCESS**</u>
<u>**FOURTEENTH AMENDMENT TO THE U.S. CONSTITUTION**</u>
<u>**and ARTICLE I SECTION 9 OF THE IOWA CONSTITUTION –**</u>
<u>**AGAINST DEFENDANTS BURLINGTON AND CHIPREZ**</u>

1-82.    Plaintiffs incorporate paragraphs 1 through 82 above as though fully set forth herein.

83.    Defendant Chiprez fired his service weapon at Jones in an unreasonable, unnecessary and/or reckless manner resulting in Jones' death.

84.    At the time Defendant Chiprez fired his service weapon, he knew Jones was not a threat because Jones never fired or even pointed his handgun at Chiprez or anyone else and Chiprez knew that Jones dropped the gun he was carrying when ordered to do so.

85.    Defendant Chiprez made the decision to discharge his firearm at Jones when Jones was lying down and attempting to surrender.

86.    Defendant Chiprez made the decision to shoot and kill Jones at a time when waiting or even retreating were clear and viable options.

87.    Defendant Chiprez's actions in firing his weapon at Jones after observing Jones drop his gun when ordered to do so and then falsely claiming Jones was raising his hands at chest level, but that he was unable to see that Jones was no longer holding a gun, in order to justify the use of deadly force was so egregious and outrageous as to shock the conscience.

14

88.     In firing his weapon at Jones, Defendant Chiprez acted with deliberate indifference to a significant risk of harm to Plaintiff and did so, at least in part, because Jones was an African American.

89.     In firing his weapon at Jones, Defendant Chiprez acted with the specific intent to cause harm.

90.     Defendant Chiprez acted under the color of state law, violated the right of Marquis Jones to substantive due process as guaranteed by the Fourteenth Amendment to the United States Constitution, as enforced through 42 U.S.C. § 1983, and Article I, Section 9 of the Iowa Constitution.

91.     The Defendant City of Burlington violated the right of Marquis Jones to substantive due process as guaranteed by the Fourteenth Amendment to the United States Constitution, as enforced through 42 U.S.C. § 1983, and Article I, Section 9 of the Iowa Constitution by engaging in a cover up of Defendant Chiprez's wrongful conduct.

92.     Plaintiffs have been damaged as a direct and proximate result of Defendants' acts and omissions as set out in this Complaint.

**WHEREFORE,** the Plaintiffs pray for judgment against the Defendants City of Burlington and Chris Chiprez individually, in an amount which will fully and fairly compensate them for their injuries and damages; for attorneys' fees; for interest and costs as allowed by law; for punitive damages against Defendant Chiprez; and for such other and further relief as may be just in the premises.

## COUNT III

### ARREST WITHOUT PROBABLE CAUSE
### FOURTH AMENDMENT TO THE U.S. CONSTITUTION
### and ARTICLE I, SECTION 8 OF THE IOWA CONSTITUTION
### FOR USE OF DEADLY OF DEADLY FORCE –
### AGAINST ALL DEFENDANTS

1-92. Plaintiffs incorporate paragraphs 1 through 92 above as though fully set forth herein.

93. Defendants acted unreasonably by using deadly force in order to seize Jones when no such force was justified.

94. The Defendants, acting under the color of state law, violated the right of Jones to be free from unreasonable seizure as guaranteed by the Fourth Amendment to the United States Constitution, enforced through 42 U.S.C. § 1983, and Article I, Section 8, of the Iowa Constitution.

95. The Defendants proximately caused damages to Plaintiffs by unlawfully and without a proper basis to do so, seizing him using excessive deadly force in violation of his rights guaranteed by the Fourth Amendment to the United States Constitution, as enforced through 42 U.S.C. § 1983, and Article I, Section 8, of the Iowa Constitution.

**WHEREFORE,** the Plaintiffs pray for judgment against the Defendants in an amount which will fully and fairly compensate them for their injuries and damages; for attorneys' fees; for interest and costs as allowed by law; for punitive damages against Defendants Chiprez; and for such other and further relief as may be just in the premises.

**COUNT IV**

**IMPROPER SEIZURE**
**FOURTH AMENDMENT TO THE U.S. CONSTITUTION and**
**ARTICLE I, SECTION 8 OF THE IOWA CONSTITUTION**
**AGAINST DEFENDANT CITY OF BURLINGTON**

1-95.    Plaintiffs incorporate paragraphs 1 through 95 above as though fully set forth herein.

96.    Defendant City of Burlington had no legitimate reason to maintain possession of Jones' cell phone upon completion of the criminal investigation into his death.

97.    Defendant City of Burlington acted unreasonably by refusing to return the cell phone to its rightful owners even after repeated requests and maintaining possession of the cell phone to obtain an advantage in any civil litigation.

98.    On October 3, 2017, at the request of Defendant City of Burlington, the custody of the cell phone was transferred to City of Burlington.

99.    Defendant City of Burlington acted unreasonably by attempting to open and retrieve information from the cell phone without a court order authorizing the search; and/or without probable cause for such a search given that no probable cause could be established to search the cell phone to investigate the only crime Jones was accused of committing - playing music too loud.

100.    Defendant, acting under the color of state law, violated the right of Jones to be free from unreasonable search as guaranteed by the Fourth Amendment to the United States Constitution, enforced through 42 U.S.C. § 1983, and Article I, Section 8, of the Iowa Constitution.

101.    Defendant proximately caused damages to Plaintiffs by unlawfully and without a proper basis to do so, seizing and attempting to search Jones' cell phone; initially refusing to return

it; and failing to follow applicable law for property seizure; all in violation of Plaintiffs rights guaranteed by the Fourth Amendment to the United States Constitution, as enforced through 42 U.S.C. § 1983, and Article I, Section 8 of the Iowa Constitution.

   **WHEREFORE,** the Plaintiffs pray for judgment against the Defendants City of Burlington an amount which will fully and fairly compensate them for their injuries and damages; for attorneys' fees; for interest and costs as allowed by law; and for such other and further relief as may be just in the premises.

## COUNT V

### WRONGFUL DEATH – NEGLIGENCE - IOWA LAW AGAINST DEFENDANTS CHIPREZ AND CITY OF BURLINGTON

   1-101.   Plaintiffs incorporate paragraphs 1 through 101 above as though fully set forth herein.

   102.   Defendant Chiprez owed Plaintiffs a duty to act reasonably in the use of deadly force; to conform to an objectively reasonable standard of conduct regarding when, where and under what circumstances use of deadly force is warranted; and to not deprive Jones of his inalienable rights to enjoy and defend his life and pursue and obtain safety and happiness in accord with Article I, Section 1, of the Iowa Constitution.

   103.   Defendant Chiprez breached that duty by discharging his service weapon at Jones when Jones did not pose an imminent threat to Chiprez or anyone else.

   104.   Defendant City of Burlington owed Plaintiffs a duty to have in place reasonable policies and procedures regarding the use of deadly force and/or to properly train and supervise its police officers, including Defendant Chiprez, in an objectively reasonable standard of conduct regarding when, where and under what circumstances use of deadly force is warranted; and/or to not cover up the wrongful conduct of its police officers in an attempt to avoid responsibility for

18

that wrongful conduct.

105.    Defendant City of Burlington breached those duties by not having in place reasonable policies and procedures regarding the use of deadly force and/or by failing to properly train and/or supervise Defendant Chiprez regarding the appropriate use of deadly force; and/or by attempting to cover up and mislead the public about Defendant Chiprez's wrongful conduct; and/or by ratifying the wrongful conduct after the fact.

106.    The Defendant City of Burlington is responsible for the conduct of Chiprez under *respondeat superior*.

107.    The Defendants breach of duty owed caused injuries and damages to the Plaintiffs including the wrongful death of Jones, the loss of adult child consortium for Williams and parental loss of consortium for the Jones' children.

108.    At all times relevant hereto, Defendant Chiprez acted as an agent of Defendant City of Burlington and within the scope of his authority as a police officer.

109.    In the alternative, should Defendant claim immunity and/or qualified immunity for acts within the scope of his authority, Plaintiffs plead that he acted outside that scope of authority.

110.    Defendant City of Burlington ratified the conduct of Defendant Chiprez after he took the actions complained of in this complaint.

**WHEREFORE,** the Plaintiffs pray for judgment against the Defendants Burlington and Chris Chiprez in an amount which will fully and fairly compensate them for their injuries and damages; for attorneys' fees; for interest and costs as allowed by law; for punitive damages against Defendant Chiprez; and for such other and further relief as may be just in the premises.

## COUNT VI

### LOSS OF CONSORTIUM – ALTOVESE WILLIAMS, individually and as Next friend of B.B.D., M.R.J., Jr., D.K.J., M.R.J, III, and M.R.H. AGAINST DEFENDANTS CHIPREZ AND CITY OF BURLINGTON

1-110.   Plaintiffs incorporate paragraphs 1 through 110 above as though fully set forth herein.

111.   Williams is the natural mother and administrator of the Estate of Marquis Jones.

112.   B.B.D., M.R.J., Jr., D.K.J., M.R.J, III and M.R.H. are minors and are the natural children of Marquis Jones.

113.   Williams brings this claim on her own behalf and as next friend of B.B.D., M.R.J., Jr., D.K.J., M.R.J, III and M.R.H., pursuant to Iowa Code 1.210 and *Madison v. Colby*, 348 N.W.2d 202, 207 (Iowa 1984).[1]

114.   Since Marquis' death, Williams, B.B.D., M.R.J., Jr., D.K.J., M.R.J, III and M.R.H. have suffered loss of aid, companionship, cooperation and affection of Marquis Jones.

115.   As a result of said losses, Williams, B.B.D., M.R.J., Jr., D.K.J., M.R.J, III and M.R.H. have been damaged.

116.   The Defendants are liable to Williams, B.B.D., M.R.J., Jr., D.K.J., M.R.J, III and M.R.H. for their losses of consortium.

117.   The losses of Williams, B.B.D., M.R.J., Jr., D.K.J., M.R.J, III and M.R.H. are individual and separate from the losses sustained by the Estate of Marquis Jones as the result of his death caused by the wrongful conduct of the Defendants.

---

[1] "Authority to sue under section 613.15 passed to the administrator but, under section 633.336, the recovery was to be apportioned to the spouse and children of the decedent in accordance with their loss."

**WHEREFORE**, Plaintiffs pray for judgment against Defendants Chiprez and the City of Burlington in an amount sufficient to fairly and adequately compensate them for their injuries, losses and damages, for attorneys' fees, for interest and costs as allowed by law; for punitive damages against Defendant Chiprez; and for such other and further relief as the Court deems appropriate.

<u>**COUNT VII**</u>

<u>**VIOLATION OF OPEN RECORDS LAWS**</u>
<u>**INCLUDING ARTICLE I, SECTION 2 of the IOWA CONSTITUTION**</u>
<u>**AGAINST DEFENDANT CITY OF BURLINGTON**</u>

1-117.   Plaintiffs incorporate paragraphs 1 through 117 above as though fully set forth herein.

118.   Burlington police officer Jesse Hill shot and killed Autumn Steele on January 6, 2015.

119.   A public records request for information regarding the shooting death of Autumn Steele was made soon after her death.

120.   The public records request for information regarding the death of Autumn Steele has now been pending for over five years without the City of Burlington releasing any information pursuant to that request and despite numerous orders entered requiring it to do so.

121.   The County Attorney for Des Moines County was fined for refusing to comply with an order to release the records at the request of the Defendant City of Burlington.

122.   Rather than release the records, the Defendant City of Burlington has chosen to repeatedly file appeals and delay the release of the records.

123.   The tactics of the City of Burlington, along with other government entities, including the State of Iowa, intent on keeping government wrongdoing secret have made it fruitless and impossible to properly enforce Iowa's open records laws.

124.    The City of Burlington should be immediately required to release all information regarding the shooting death of Marquis Jones in compliance with the holding of the Iowa Supreme Court in *Mitchell v. Cedar Rapids*, No. 18-0124, filed April 4, 2019.

125.    The Defendant City of Burlington has acted in violation of Article I, Section 2, of the Iowa Constitution, requiring that "all political power is inherent in the people. Government is instituted for the protection, security and benefit of the people and they have the right, at all times, to alter or reform the same, whenever the public good may require it."

**WHEREFORE,** the Plaintiffs pray for an Order from this Court requiring the Defendant City of Burlington to publicly release all records regarding the shooting death of Marquis Jones in compliance with *Mitchell v. Cedar Rapids*, No. 18-0124, filed April 4, 201; for attorneys' fees; for interest and costs as allowed by law; and for such other and further relief as may be just in the premises.

**JURY DEMAND**

The Plaintiffs, Altovese Williams, individually, as Administrator of the Estate of Marquis Jones, and as next of Friend for B.B.D., M.R.J., Jr., D.K.J., M.R.J, III, and M.R.H. respectfully request a trial by jury on all legal claims raised by their Complaint.

Respectfully submitted,

**DAVE O'BRIEN LAW**
1500 Center Street NE
Cedar Rapids, Iowa 52402
Telephone:  (319) 861-3001
Facsimile:  (319) 861-3007
E-mail: dave@daveobrienlaw.com

By: /s/ David A. O'Brien
    DAVID A. O'BRIEN, AT0005870

**CROWLEY & PRILL**
3012 Division Street
Burlington, Iowa 52601
Phone:   319.753.1330
Fax:       319.752.3934
Email:    amahoney@cbp-lawyers.com

By: /s/ Andrew L. Mahoney
      ANDREW L. MAHONEY AT0012329

**ATTORNEYS FOR PLAINTIFFS**

**Original Filed.**