IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF IOWA
DAVENPORT DIVISION

| | |
|---|---|
| ALTOVESE WILLIAMS, individually, and as ADMINISTRATOR of the ESTATE of MARQUIS JONES, Deceased, and as NEXT of FRIEND for MINORS, B.B.D., D.K.J., M.R.J. JR., M.R.J., III, and M.R.H., <br><br>　　　Plaintiffs, <br><br>Vs. <br><br>CITY OF BURLINGTON and CHRIS CHIPREZ, <br><br>　　　Defendants. | Case No: 3:19-cv-00043 <br><br><br><br>**PLAINTIFFS' BRIEF IN SUPPORT OF MOTION IN LIMINE** |

**TABLE OF CONTENTS**

A. The Plaintiffs' Motions in Limine……………………………………………….…  1

　1. The defense must be precluded from offering any evidence, eliciting any testimony, or otherwise referencing any facts not known to Officer Chiprez at the time of the incident……………………………………………………………………………..  2

　2. The defense must be precluded from offering any evidence, eliciting any testimony, or otherwise referencing Marquis's unrelated prior arrests and convictions (including but not limited to all non-felony and/or aggravated misdemeanor arrests and convictions, and any juvenile records)…………………………………………......  7

　3. The defense must be precluded from offering evidence, eliciting testimony or making any reference to Plaintiff Altovese's post-incident interaction with Officer Chiprez as irrelevant and a waste of time and judicial resources pursuant to F.R.E. 402 and 403……………………………………………………………………………….  9

　4. The defense must be precluded from offering any evidence, eliciting any testimony, or otherwise referencing any threats allegedly made by community members in response to Marquis being shot and killed by police…………………………………  10

　5. The defense must be precluded from offering evidence, eliciting testimony or making any reference to any minor children of Marquis not included as Plaintiffs in this case………………………………………………………………………………………  11

　6. The defense must be precluded from offering evidence, eliciting testimony or making any reference to any settlement demand or settlement discussions of any nature,

the content thereof, amount demanded or offered, or any other comment or statement intended to convey in any manner the existence of settlement negotiations or the amounts thereof pursuant to F.R.E. 408 and 402………………………………………… 11

7. The defense must be precluded from eliciting any testimony referencing the fact that a motion in limine was filed, or the content of any such motion, as irrelevant and unfairly prejudicial pursuant to F.R.E. 402 and 403…………………………………… 12

8. The defense should be precluded from asking Plaintiff's counsel to stipulate to the admissibility of any evidence or facts in the presence of the jury……………………… 12

9. The defense must be precluded from making any reference to any person, or eliciting any testimony from any person to be called as a witness on behalf of Defendants, including expert witnesses, if not previously identified and disclosed as required by the Federal Rules of Civil Procedure…………………………………… 13

10. Defendants' retained expert witness, Lt. Col. Robert T. Johnson, must be precluded from offering any opinion that there is no evidence showing that Defendant Burlington Police Department (BPD)'s policies, practices, and/or customs deprived citizens of the right to be free from the use of excessive force as guaranteed by the Fourth Amendment of the United States Constitution, pursuant to F.R.E. 702 because it is not helpful, constitutes an improper legal conclusion, and invades the province of the jury pursuant to F.R.E. 702………………………………………………………………………….. 13

COMES NOW the Plaintiffs, Altovese Williams, individually and as Administrator of the Estate of Marquis Jones, and as next friend of B.B.D., M.R.J., Jr., D.K.J., M.R.J. III, and M.R.H., by and through their undesigned counsel, and respectfully submit the following Brief in Support of Motion *in Limine* for the Court's consideration:

## **MOTION *IN LIMINE***

1. **The defense must be precluded from offering any evidence, eliciting any testimony, or otherwise referencing any facts not known to Officer Chiprez at the time of the incident.**

Plaintiffs ask this Court to exclude any evidence or testimony of facts not known to Officer Chiprez at the time he shot and killed Marquis, but which later came to light. Specifically, Plaintiffs asks this Court to preclude the defense from offering any evidence, eliciting any testimony, or otherwise referencing:

a. **That there was an outstanding warrant for Marquis's arrest;**

      **b. That Marquis did not have a driver's license;**

      **c. That Marquis did not have a permit to carry a firearm (or that the firearm he dropped was "fully loaded");**

      **d. That Riffel later claimed Marquis attempted to point a gun at his head; and**

      **e. That there was marijuana and a scale inside the black bag Marquis was carrying when he exited the vehicle.**

At the time of the incident, Officer Chiprez did not know and had no reason to know that (a) there was a warrant for Marquis' arrest; (b) that Marquis did not have a drivers' license; (c) that Marquis did not have a permit to carry a firearm (or that the gun was loaded); or (d) that he had marijuana and a scale inside the black bag. Just as Plaintiff cannot rely on evidence outside the personal knowledge of Officer Chiprez in arguing that his use of force was objectively unreasonable, Officer Chiprez cannot rely on evidence not known to him at the time he shot and killed Marquis in arguing that his use of force was objectively reasonable. Because none of these facts were known to Officer Chiprez at the time he shot and killed Marquis, they must be excluded as wholly irrelevant pursuant to F.R.E. 402. Moreover, to the extent these later acquired facts have some marginal relevance to this action, they must nonetheless be excluded pursuant to F.R.E. 403, because the probative value of such evidence is substantially outweighed by the danger of unfair prejudice and would undoubtedly confuse the issues for the jury to decide.

The question of relevance in this case must be viewed "through the lens of the Fourth Amendment reasonableness standard, which governs claims for excessive force." *Shannon v. Koehler*, No. C 08-4059-MWB, 2011 WL 10483363, at *10 (N.D. Iowa Sept. 16, 2011) (citing *Graham v. Connor,* 490 U.S. 386, 395 (1989)). "It is well settled that this reasonableness standard **'is viewed from the vantage point of the police officer at the time of arrest or seizure**.'

" *Church v. Anderson*, 249 F. Supp. 3d 963, 977 (N.D. Iowa 2017), *aff'd,* 898 F.3d 830 (8th Cir. 2018) (quoting *Gill v. Maciejewski*, 546 F.3d 557, 562 (8th Cir. 2008) (citing *Wertish v. Krueger*, 433 F.3d 1062, 1066 (8th Cir. 2006)); *see also Billingsley v. City of Omaha*, 277 F.3d 990, 993 (8th Cir. 2002) ("The aforementioned reasonableness of force is judged from the perspective of the officer on the scene, taking into consideration the facts known to him, as opposed to one possessing the illuminating power of hindsight.") (citing *Nelson v. County of Wright*, 162 F.3d 986, 989 (8th Cir. 1998)); *Nelson*, 162 F.3d at 990 ("The issue of reasonableness must be examined from the perspective of the facts known to the officer at the time of the incident.") (citing *Schulz v. Long*, 44 F.3d 643, 648 (8th Cir. 1995)). As the Eighth Circuit has long explained, the Supreme Court's "use of the phrases 'at the moment' and 'split-second judgment' are strong indicia that the reasonableness inquiry extends only to those facts known to the officer at the precise moment the officers effectuate the seizure." *Schulz v. Long*, 44 F.3d 643, 648 (8th Cir. 1995). "Ultimately, the reasonableness of the force applied must be judged from the perspective of a reasonable officer on the scene 'rather than with the 20/20 vision of hindsight.' " *Mann v. Yarnell*, 497 F.3d 822, 826 (8th Cir. 2007) (citing *Graham*, 490 U.S. at 396).

Here, Officer Chiprez testified that he pulled Marquis over "[f]or the loud music ordinance, City ordinance." Chiprez Dep. at 15:19-24, attached hereto as **Exhibit 1**. Marquis then stopped his car, got out, and started running. *Id.* at 16:4-6. Chiprez pursued Marquis on foot. *Id.* at 16:7-12. Chiprez confirmed he did not recognize Marquis when he decided to pull him over as anything other than a black male, *id.* at 16:18-25, and had no idea who Marquis was when he was engaging with or firing those eight shots at him. *Id.* at 9:14-25; 17:9-10. Officer Chiprez admits that he did not know whether or not Marquis had a gun carry permit at the time he shot and killed him. *Id.* at16:18-17:10. As far as Chiprez knew, Marquis, who Chiprez admits never turned around or

4

reached back with his arm to point the gun at him, *id.* at 27:5-15, was in legal possession of said firearm, as guaranteed by the Second Amendment. See *District of Columbia v. Heller*, 554 U.S. 570, 592 (2008) (The Second Amendment "guarantee[s] the individual right to possess and carry weapons in case of confrontation.").

Reasonableness, like probable cause, "is determined at the time of arrest and after-acquired knowledge is irrelevant to the analysis." *Hosea v. City of St. Paul*, 867 F.3d 949, 956 (8th Cir. 2017). Thus, the relevant inquiry is what Officer Chiprez knew or otherwise observed at the time he shot Marquis, not what other officers knew at the time (*e.g.*, Riffle claims Marquis attempted to point a gun at his head but never conveyed this information to Chiprez prior shots being fire) or what was learned after the incident. Chiprez may not now claim that Marquis was in illegal possession of the firearm in order to *ex post facto* justify his conduct. Chiprez cannot claim to have used deadly force on Marquis because Marquis attempted to point a gun at Riffel's head. The same goes for any evidence that Marquis had a warrant out for his arrest, did not have a driver's license, or had marijuana and a scale on him, none of which Officer Chiprez knew at the time. The simple possession of a gun was the only threat of serious injury or harm of which Chiprez was aware at the time he decided to use deadly force. Dep. at 27:5-15. The reasonableness of Officer Chiprez's conduct in light of the facts and circumstances known to him at the time, will be for the jury to decide. Any facts unknown to officer Chiprez at the time of the incident are wholly irrelevant and should not be presented to the jury.

The defense may nonetheless argue that one or more of these later-acquired facts are somehow relevant as evidence of Marquis's motive or intent for fleeing and/or eluding the police. This argument should be summarily rejected. *See e.g.*, *Grant v. City of Chicago*, No. 04 C 2612, 2006 WL 8460591, at *2–4 (N.D. Ill. Aug. 4, 2006) (precluding defendants from offering evidence

5

as to information unknown to the defendant officer at the time he shot the decedent, but which he later learned, specifically "all evidence and references to anything having to do with the terminated car chase which was not known to [the defendant officer]; the drugs allegedly in [the decedent]'s pocket; ownership of the car; the handgun that was allegedly thrown from the car before [the officer] confronted [the decedent], including but not limited to the fact that the gun may or may not have been involved in a prior crime; and the fact that [the decedent] was on bond at the time of the shooting," because reference to facts learned by an officer acter the fact "impermissibly taint the jury's consideration of whether the force employed by the officer was reasonable under the circumstances confronting the officer…").

Here, like in *Grant*, even if Marquis's outstanding arrest warrant, his lack of drivers' license, his lack of permit to carry a firearm, or that he had marijuana and a scale on him had some marginal relevance to this case, these facts should be excluded because the prejudice to Plaintiff substantially outweighs the probative value of this evidence to Defendant Chiprez. As the *Grant* court explained under substantially similar circumstances, "[s]uch evidence would attempt to justify Officer [Chiprez]'s actions rather than focus on [Marquis]'s actions at the time he was shot. Because Officer [Chiprez] was unaware of this information until after he shot [Marquis], the court [should] exclude from trial evidence regarding these allegations as irrelevant and prejudicial." *Id.* at *3 (citing *Palmquist* v. *Selvik*, 111 F.3d 1332 (7th Cir. 1997). Allowing the defense to present such evidence would inevitably shift the jury's attention from Marquis's behavior at the scene, which is material in judging the objective reasonable of Officer Chiprez's use of force, to information not possessed by Officer Chiprez. The jury need only know *what the officer knew and saw when he fired his weapon* as it would be unfairly prejudicial to give the jury the benefit of

6

hindsight in allowing the jurors to know more than what Officer Chiprez knew at the time of the shooting.

For the foregoing reasons, the defense must excluded from referencing, eliciting any testimony, or introducing any evidence at trial regarding Marquis's conduct or purported motive or intent to flee of which Officer Chiprez was unaware at the time of the shooting, specifically that (a) there was an outstanding warrant for Marquis' arrest; (b) that Marquis did not have a drivers' license at the time; (c) that Marquis did not have a permit to carry a firearm (or that the gun was loaded); and (d) that he had marijuana and a scale inside the black bag he was carrying, because such evidence is irrelevant and any probative value and any probative value is substantially outweighed by the danger of unfair prejudice.

**2. The defense must be precluded from offering any evidence, eliciting any testimony, or otherwise referencing Marquis's unrelated prior arrests and convictions (including but not limited to all non-felony and/or aggravated misdemeanor arrests and convictions, and any juvenile records).**

The decedent's criminal history, including records of prior arrests, convictions, and warrants, is wholly irrelevant to any issue in this case and would serve only to impugn the character of the decedent, who is not available to testify on his own behalf or otherwise defend himself. Any marginal probative value of such evidence is substantially outweighed by the danger of unfair prejudice and should be excluded pursuant to F.R.E. 402, 403, 404(b), and 609. ***See* Marquis Jones arrest records and criminal history, attached hereto as <u>Exhibit 2</u>.**

The primary issue before the jury in this case is whether Officer Chiprez's use of force was "objectively reasonable" based on the totality of the circumstances known to him at the time of the incident. *Graham*, 490 U.S. at 397; *Cook v. City of Bella Villa*, 582 F.3d 840, 849 (8th Cir. 2009). Although Marquis's prior criminal history *may* have been relevant if known to Officer Chiprez when he decided to shoot and kill Marquis, *see Eason v. Anoka-Hennepin E. Metro Narcotics &*

*Violent Crimes Task Force*, No. CIV.00-311(PAM/RLE), 2002 WL 1739666, at *2 (D. Minn. July 22, 2002), Officer Chiprez admits that he had no idea who Marquis was at the time of the incident and did not know he was shooting at Marquis. Chiprez Dep. at 9:14-25. Thus, Marquis's criminal history and arrest records have no bearing whatsoever on the reasonableness of Chiprez's use of deadly force and must be excluded as irrelevant pursuant to F.R.E 402.

To the extent the decedent's prior arrests and convictions are arguably relevant to defend against any claim for lost wages or loss of earning capacity brought on behalf of Marquis's estate, Plaintiff agrees to dismiss and/or disclaim any right to pursue such damages at trial, rendering Plaintiff's prior criminal history wholly irrelevant. Any other scant or marginal relevance of the decedent's criminal history which may be argued by the defense is substantially outweighed by the risk of unfair prejudice and therefore inadmissible pursuant to F.R.E. 403. Allowing the defense to present the decedent's lengthy criminal record, none of which was known to Chiprez at the time he shot and killed Marquis, and dating back to when he was a mere 11 years old, will serve only to depict Marquis as a criminal undeserving of the life that was taken from him. *Peters v. Risdal*, No. C 12-4070-MWB, 2013 WL 9839011, at *7 (N.D. Iowa Dec. 5, 2013) (citing *United States v. Muhlenbruch,* 634 F.3d 987, 1001 (8th Cir. 2011) (explaining that evidence may be excluded pursuant to Rule 403 if it has an unfair tendency to suggest decision on an improper basis). Although the defense will try to find some other justification for introducing such evidence, it would, in truth, be presented primarily to impugn the character of the decedent in the eyes of the jury, which is plainly prohibited pursuant to F.R.E. 404(b). Introduction of such evidence would be especially egregious in a case such as this where the decedent cannot testify on his own behalf as a direct result of the defendants who would seek to introduce such evidence against him.

Finally, evidence of Marquis's prior convictions is inadmissible for impeachment purposes pursuant to F.R.E. 609, which only applies to "witnesses." Marquis Jones will not be a witness at trial. In addition, aside from the two particular convictions, discussed *infra*, Marquis's prior criminal convictions do not fall within the scope or F.R.E. 609 because they are not punishable by imprisonment for more than a year, are not crimes of dishonesty or false statement pursuant to F.R.E. 609(a)[1], and/or are juvenile adjudications which are inadmissible in all civil actions pursuant to F.R.E. 609(d). Moreover, although the defense could argue, incredibly, that Marquis's prior convictions for first degree harassment (aggravated misdemeanor) and first-degree robbery (felony committed more than 13 years ago while he was a minor) technically fall within the scope of F.R.E. 609(a), his credibility is not at issue in this case because he *made no statement before he was shot and killed for which his credibility could reasonably be tested, and he is not available to testify on his own behalf.* Thus, to the extent any of Marquis's prior convictions fall within the scope of F.R.E. 609, they are irrelevant and the probative value of any such evidence is substantially outweighed by the danger of unfair prejudice.

3. **The defense must be precluded from offering evidence, eliciting testimony or making any reference to Plaintiff Altovese's post-incident interaction with Officer Chiprez as irrelevant and a waste of time and judicial resources pursuant to F.R.E. 402 and 403.**

Any reference to after-the-fact interactions between Officer Chiprez and the decedent's mother must be excluded as irrelevant and a waste of time pursuant to F.R.E. 402 and 403. Specifically, when asked at deposition whether she had some interaction with Officer Chiprez after the death of her son, Altovese testified that sometime after October 1, 2017, she called the "non-

---

[1] To be clear, the Eighth Circuit does not consider robbery a crime of dishonesty or false statements within the meaning of F.R.E. 609. See *United States v. Yeo*, 739 F.2d 385, 388 (8th Cir. 1984) ("we believe that the better view is that theft is not a crime of 'dishonesty or false statement' as that term is used in Rule 609(a)(2)"). Even if robbery was considered a crime of dishonesty, his robbery convictions all took place more than 10 years ago, while he was a teenager, such that those convictions are not more probative of the decedent's credibility than they are prejudicial.

9

emergency number" to report that she had seen a gun in the alley between her neighbor's house and her garage as she "was pulling into [her] garage to take groceries in the house." Altovese Dep. at 44:7-16, attached hereto as **Exhibit 3**. She explained that "because it was close to school getting out," she "didn't want some kid…to pick that up thinking it was a toy." *Id.* at 44:11-19. To her surprise, "they sent [Chiprez] out to [her] house to check it out." *Id.* at 44:20-21. Altovese testified that she told Chiprez to "get the hell away from [her] house," that he "murdered [her] son," and she "[doesn't]"even know why they would send [him] over here." *Id.* at 44:21-23. According to Altovese, Chiprez responded, "well, I apologize, I'll have another officer come. And that was the end of it." *Id.* at 44:23-25. Neither this interaction nor any other post-incident conversation between the decedent's family and Officer Chiprez or any other City employee have any bearing whatsoever on any issue in this case, and any reference to this particular interaction will do nothing but needlessly prolong the trial and confuse the issues to be decided by the jury. Accordingly, the defense should be precluded from eliciting any testimony or otherwise referencing any post-incident interactions between the decedent's mother and Officer Chiprez as irrelevant and a needless waste of time and judicial resources pursuant F.R.E. 402 and 403.

   4. **The defense must be precluded from offering any evidence, eliciting any testimony, or otherwise referencing any threats allegedly made by community members in response to Marquis being shot and killed by police.**

Any reference to threats allegedly made by community members in response to Marquis being shot and killed by police must be excluded as irrelevant and unduly prejudicial pursuant to F.R.E. 402 and 403. Community outrage arising from the death of yet another young black man at the hands of police is not surprising in light of our current political atmosphere. But it is wholly irrelevant in determining whether or not Officer Chiprez used unreasonable deadly force in shooting Marquis or whether the Burlington Police Department is liable under *Monell*.

Introduction of such evidence would be a waste of time and any marginal relevance is substantially outweighed by the danger of unfair prejudice pursuant to F.R.E. 403. The potential prejudicial effect of such evidence is even more probable given the deeply-rooted, yet conflicting viewpoints regarding the prevalence of police violence against young black men that exists in this country.

5. **The defense must be precluded from offering evidence, eliciting testimony or making any reference to any minor children of Marquis not included as Plaintiffs in this case.**

There is no legitimate reason for the defense to refer to or elicit testimony regarding any minor children of Marquis not included as plaintiffs in this case. Five of Plaintiff's minor children maintain loss of consortium claims arising from the death of their father. Although Marquis may have allegedly fathered additional children, only the listed Plaintiffs are seeking damages in this action. Any reference to other minor children who, for one reason or another, opted out of this lawsuit (*see e.g.*, Altovese Dep. at 17:7-18:6), must be precluded as irrelevant pursuant to F.R.E. 402. And any marginal relevance is substantially outweighed by the danger of unfair prejudice pursuant to F.R.E. 403, in that the defense would likely use the existence of other children to paint Marquis as a bad father or for some other nefarious purpose. Of course, because Officer Chiprez shot and killed him, Marquis will not be able to defend himself against any such allegations. Nor will those minor children not named as Plaintiffs in this case. There is absolutely no legitimate or relevant reason to elicit testimony regarding minor children in open court where those children maintain no claims whatsoever against Defendants, have not chosen to be a part of this lawsuit, and are only marginally relevant to this case, if at all.

6. **The defense must be precluded from offering evidence, eliciting testimony or making any reference to any settlement demand or settlement discussions of any nature, the content thereof, amount demanded or offered, or any other comment or statement intended to convey in any manner the existence of settlement negotiations or the amounts thereof pursuant to F.R.E. 408 and 402.**

F.R.E. 408 "plainly precludes such evidence 'when offered to prove liability for, or invalidity of, or amount of a claim that was disputed as to validity or amount, or to impeach through a prior inconsistent statement or contradiction,' although such evidence may in some cases be offered for other purposes." *Lee v. Small*, 829 F. Supp. 2d 728, 739 (N.D. Iowa 2011) (*citing* Fed. R. Evid. 408). There is no relevant reason or permissible purpose to introduce evidence of any demands or settlement discussions that took place before trial. Any such evidence must be excluded pursuant to F.R.E. 408 and 402. *See e.g.*, *McNeal v. SDG Macerich Properties, L.P.*, No. C 07-4015 MWB, 2008 WL 2691047, at *21 (N.D. Iowa July 1, 2008).

7. **The defense must be precluded from eliciting any testimony referencing the fact that a motion *in limine* was filed, or the content of any such motion, as irrelevant and unfairly prejudicial pursuant to F.R.E. 402 and 403.**

The defense must be precluded from eliciting any testimony or making any reference to the fact that a motion *in limine* was filed, regardless of whether or not said motion was granted, as unduly prejudicial and irrelevant pursuant to F.R.E. 402 and 403. This request includes any testimony or argument that Defendants wanted to bring additional evidence to the attention of the jury, but the court would not allow Defendants to do so, and any suggestion or implication to the jury that Plaintiff has moved to prohibit such proof. Any attempt by the defense to suggest or infer that Plaintiff has sought to prohibit the jury from hearing certain evidence is improper and any arguments on such matters should be accomplished outside the presence of the jury. *See e.g.*, *Niver v. Travelers Indem. Co. of Illinois*, 433 F. Supp. 2d 968, 998–99 (N.D. Iowa 2006); *Rice v. Luken Commc'ns, LLC*, No. 4:11-CV-00386-KGB, 2013 WL 3010795, at *2 (E.D. Ark. June 14, 2013).

8. **The defense should be precluded from asking Plaintiff's counsel to stipulate to the admissibility of any evidence or facts in the presence of the jury.**

The defense should be precluded from asking Plaintiff's counsel to stipulate to the admissibility of any evidence or facts in the presence of the jury. Of course, the defense may ask pertinent witnesses whether documents or exhibits are what they purport to be, but allowing the defense to request that Plaintiff's counsel stipulate to the admissibility of any evidence or facts in front of the jury would serve only to prejudice Plaintiffs in the event Plaintiffs' counsel declines to stipulate to the admissibility of certain facts or evidence. Although Plaintiffs are not obligated to stipulate to the admissibility of any evidence or facts, the jury – not versed in the law – may interpret Plaintiffs' counsel's refusal to stipulate as obstructive conduct. In order to avoid any potential prejudice, Plaintiffs ask that defense counsel not ask Plaintiff's counsel to stipulate to the admissibility any evidence or facts in the presence and hearing of the jury.

9. **The defense must be precluded from making any reference to any person, or eliciting any testimony from any person to be called as a witness on behalf of Defendants, including expert witnesses, if not previously identified and disclosed as required by the Federal Rules of Civil Procedure.**

Defendants must be precluded from referencing any persons, eliciting any testimony, or calling any witness, including expert witnesses, not previously identified and disclosed as persons with knowledge of relevant facts or opinions pursuant to Fed. R. Civ. P. 26. *See e.g.*, *Webb v. City of Waterloo*, No. 17-CV-2001-CJW-MAR, 2020 WL 1159755, at *4–5 (N.D. Iowa Mar. 10, 2020) (*citing* Fed. R. Civ. P. 26(a)(1)(A)(i)). This request is necessary and appropriate to avoid any undue surprise or prejudice that would result from Defendants' failure to disclose any witness or otherwise comply with the Federal Rules of Civil Procedure, and to reduce the possibility of the need for a new trial and/or appeal that would inevitably result therefrom.

10. **Defendants' retained expert witness, Lt. Col. Robert T. Johnson, must be precluded from offering any opinion that there is no evidence showing that Defendant Burlington Police Department (BPD)'s policies, practices, and/or customs deprived citizens of the right to be free from the use of excessive force as guaranteed by the Fourth Amendment of the United States Constitution, pursuant**

### to F.R.E. 702 because it is not helpful, constitutes an improper legal conclusion, and invades the province of the jury pursuant to F.R.E. 702.

"Expert testimony is admissible if it is reliable and will help the jury understand the evidence or decide a fact in issue." *Hartley v. Dillard's, Inc.,* 310 F.3d 1054, 1060 (8th Cir.2002); See also *United States v. Arenal,* 768 F.2d 263, 269 (8th Cir.1985). Although an expert opinion is not inadmissible merely "because it embraces an ultimate issue to be decided by the trier of fact" under F.R.E. 704(a), opinions that are "phrased in terms of inadequately explored legal criteria" or that "merely tell the jury what result to reach" are not deemed helpful to the jury, and are therefore not admissible under Rule 702. *Shannon v. Koehler*, No. C 08-4059-MWB, 2011 WL 10483363, at *29–30 (N.D. Iowa Sept. 16, 2011) (*quoting* Fed.R.Evid. 704 advisory committee's note); *United States v. Whitted,* 11 F.3d 782, 785 (8th Cir.1993); *accord Dow Corning Corp. v. Safety Nat'l Cas. Corp.,* 335 F.3d 742, 751 (8th Cir.2003) (affirming the trial court's rejection of an expert's legal opinions that "attempt[ed] to tell the court [as the trier of fact] what result to reach") (citations omitted)).

In § 1983 cases governed by the Fourth Amendment reasonableness standard, "the Eighth Circuit Court of Appeals, despite Rule 704, has limited the ability of experts to offer opinions on the ultimate issue." *Shannon v. Koehler*, No. C 08-4059-MWB, 2011 WL 10483363, at *29–30 (N.D. Iowa Sept. 16, 2011). In such cases, "an expert's opinion 'concerning the reasonableness of the officers' conduct in light of 'Fourth Amendment standards' is a 'legal conclusion' on the ultimate issue of law, not a 'fact-based opinion' that will assist the jury." *Id.* (*quoting Peterson v. City of Plymouth,* 60 F.3d 469, 475 (8th Cir.1995); *accord Estes v. Moore,* 993 F.2d 161, 163 (8th Cir.1993) (finding that because the ultimate conclusion on probable cause is a question of law, expert's opinion on whether probable cause existed was an inadmissible "legal conclusion"); *see also Schmidt v. City of Bella Villa,* 557 F.3d 564, 570 (8th Cir. 2009) (finding "opinions regarding

the overall reasonableness" of evidence collection and strip search procedures to be "impermissible legal conclusions," not "fact-based opinions").

Defendants retained Lt. Col. Robert T. Johnson to testify as an expert witness on their behalf at trial. Mr. Johnson's intended testimony and purported opinions are set out in a 14-page report, a copy of which is attached hereto as **Exhibit 4.** There is no need for Mr. Johnson's expert testimony in this case. A jury, apprised of the evidence and instructed with regard to the law, is more than capable of deciding the issues in this case without the kind of assistance Mr. Johnson intends to offer. This is particularly true with regard to his second purported opinion, wherein he opines that:

> "There is no evidence in the materials I reviewed that suggests that the Burlington Police Department has established, maintained, enforced, and/or ratified policies, regulations, official decisions, customs or usages which unconstitutionally deprive citizens of the right to be free from the use of excessive force while being detained as guaranteed by the Fourth Amendment of the United States Constitution."

Ex. 4, pp. 13-14.

This is nothing more than an improper legal conclusion. Indeed, it is unclear how this purported opinion differs in any material respect from what the jury will be asked to determine in this case. "Legal conclusions do not qualify as expert opinions," and a "determination that a defendant's conduct constitutes a constitutional violation is a legal conclusion." *Jones v. Slay*, No. 4:12–CV–2109–CAS, 2014 WL 2804407, at *11 (E.D. Mo. June 20, 2014) (quotation and citations omitted); *See also Peterson v. City of Plymouth*, 60 F.3d 469, 475 (8th Cir. 1995) (district court abused its discretion in allowing police-practices expert to testify that officers' conduct comported with Fourth Amendment).

While expert testimony on "industry practice or standards may often be relevant ... and expert or fact testimony on what these are is often admissible," expert testimony on matters of law

are not. *S. Pine Helicopters, Inc. v. Phoenix Aviation Managers, Inc.*, 320 F.3d 838, 841 (8th Cir. 2003)."The role of such an expert 'is to contextualize the evidence the jury will hear about the use of force by the defendant against the plaintiff, in light of the standards practiced by officers throughout the country.' " *Sloan v. Long*, 2018 WL 1243664, at *5 (E.D. Mo. Mar. 9, 2018) (citations omitted). Although testimony regarding "generally accepted police practices" may be helpful to the jury in certain circumstances, an expert is not entitled to instruct the jury on the law, nor is he entitled to tell the jury the conclusion he believes the jury should reach. Mr. Johnson's "opinion" that there is "no evidence" that the BPD in liable under *Monell*, is plainly impermissible and must be excluded.

The same goes for the purported opinions underlying this ultimate conclusion. Those purported opinions include the following:

- Department's [written] policies are generally consistent with "accepted law enforcement policy, practices, standards, trainings, and do not permit the use of excessive or unreasonable force;"

- Officer Riffel was in his 21st day of field training, which is "a standard and accepted practice in providing on the job training, once an officer graduates from initial basic academy training;"

- Based on a general review of his training records, there were "no deficiencies in [Officer Chiprez's] training;"

- Iowa Division of Criminal Investigation and Iowa Attorney General's Office review of incident "determined Officer Chiprez's shooting was a justifiable homicide under Iowa law."

None of these opinions would be helpful to the jury because they are not based on any reliable facts or data whatsoever. First, although Mr. Johnson claims that the Department's written policies are "generally consistent" with "accepted law enforcement policy, practices, standards, [and] trainings," he fails to identify or explain what the relevant "accepted" policies, practices, standard or trainings actually are. This alone warrants exclusion pursuant to Fed. R. Civ. P. 26.

Similarly, although Mr. Johnson claims that his review of Officer Chiprez's training records show "no deficiencies," he does not reference the specific training, explain what the standard training practices are, or provide any basis whatsoever for this conclusory "opinion." Moreover, that it is "standard practice" for Officer Riffel to engage in field training after graduating from initial basic academy training is not relevant to the issues to be decided in this case or helpful in any meaningful way. Finally, Mr. Johnson's reliance on the post-incident criminal investigation to show that the BPD's policies were consistent with the Constitution or that Officer Chiprez was justified in using deadly force, is wholly inappropriate. Any such testimony must be excluded as irrelevant and unduly prejudicial pursuant to F.R.E. 402 and 403. For the foregoing reasons, Mr. Johnson's purported expert opinion number two (pp. 13-14) and all underlying opinions must be excluded in full.

    Respectfully submitted,

    **CROWLEY & PRILL**
    3012 Division Street
    Burlington, Iowa 52601
    Telephone: (319)753-1330
    Facsimile: (319)752-3934
    Email: amahoney@cbp-lawyers.com
By: /s/ *Andrew L. Mahoney*
    ANDREW L. MAHONEY, AT0012329

    **DAVE O'BRIEN LAW**
    1500 Center Street NE
    Cedar Rapids, Iowa 52402
    Telephone: (319) 861-3001
    Facsimile: (319) 861-3007
    E-mail: dave@daveobrienlaw.com
By: /s/ *David A. O'Brien*
    DAVID A. O'BRIEN, AT0005870

**TRIAL LAWYERS FOR JUSTICE, PC**
421 West Water Street, Floor 3
Decorah, Iowa 52101
Telephone: (563) 382-5071
Facsimile: (888) 801-3616
Email: Nick@tl4j.com

By: /s/ *Nicholas Rowley*
NICHOLAS ROWLEY, AT0009516

**THE LAW OFFICES OF HAYTHAM FARAJ**
1935 W Belmont Avenue
Chicago, Illinois 60657
Telephone: (312) 635-0800
Facsimile: (312) 896-5185
E-mail: haytham@farajlaw.com

By: /s/ *Haytham Faraj*
HAYTHAM FARAJ, SBN291416

**ATTORNEYS FOR PLAINTIFFS**

*Copy to:*

Martha Shaff
Brandon W. Lobberecht
Amanda M. Richards
Betty, Neuman & McMahon, PLC
1900 East 54th St.
Davenport, IA 52807

(*Attorneys for Defendants*)

**PROOF OF SERVICE**

The undersigned certifies that the foregoing instrument was served upon all parties to the above cause to each of the attorneys of record herein at their respective addresses disclosed on the pleadings on this 26th day of January, 2021, by:

| | U.S. Mail / Email | | Facsimile |
| --- | --- | --- | --- |
| | Hand Delivered | | Certified Mail |
| | FedEx/Airborne Express | X | EDMS |

Signature: /s/ *Kelsi Kingery*