IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
DAVENPORT DIVISION

| | |
|---|---|
| ALTOVESE WILLIAMS, individually, and as Administrator of the Estate of Marquis Jones, and as next of Friend for Minors B.B.D., M.R.J., Jr., P.D.J., M.R.J. III, and M.R.H., <br><br> Plaintiffs, <br><br> vs. <br><br> CITY OF BURLINGTON and CHRIS CHIPREZ, <br><br> Defendants. | Civil No. 3:19-cv-43 <br><br><br> **DEFENDANTS' MEMORANDUM OF AUTHORITIES IN SUPPORT OF THEIR SECOND MOTION IN LIMINE** <br><br> *<u>ORAL ARGUMENT REQUESTED</u>* |

**COME NOW** the Defendants, City of Burlington and Chris Chiprez, by and through their attorneys, Betty, Neuman & McMahon, P.L.C., and for their Memorandum of Authorities in Support of their First Motion in Limine, state as follows:

### INTRODUCTION

Fed. R. Evid. 104(a) states "preliminary questions concerning. . . the admissibility of evidence shall be determined by the court". *United States v. Ceballos,* 593 F.Supp.2d 1054, 1058 (S.D. Iowa 2009). This Court has found that Fed. R. Evid. 103(c) implies that the Court should "decide admissibility questions outside of the presence of the jury, if possible so as to prevent inadmissible evidence from being suggested to the jury". *Id.*

# ARGUMENTS

### 23. PLAINTIFFS SHOULD BE PRECLUDED FROM DISCUSSING THE DEATHS AND ILLNESSES OF CHILDREN OF ALTOVESE WILLIAMS OTHER THAN DECEDENT, MARQUIS JONES[1].

Decedent's mother, Altovese Williams, has alleged a claim of loss of consortium relating to the fatal shooting of Marquis Jones. Iowa Code § 613.15A provides recoverable damages are the "expense and actual loss of services, companionship, and society resulting form the death of an adult child." Accordingly, the jury must determine damages based on the lost relationship between her and the decedent Marquis Jones. Ms. Williams has another son, Phillip Domonique Dwayne Jones, who was murdered in 2010 in Flint Michigan. (Williams Trans., pgs. 6; 9, attached hereto as "Exhibit G"). Ms. Williams also has a daughter, Totiana Monique Williams, who suffers from sickle cell anemia. (Exhibit G, pgs. 6; 10). The deaths and illnesses of Phillip Jones and Totiana Williams are not relevant or probative to Ms. Williams's relationship with Marquis Jones. *See* Fed. R. Evid. 401. Even if such evidence is relevant, its relevance is substantially outweighed by the potential of prejudice to Defendants. There is substantial risk jurors may be overly sympathetic to, or unduly emotional towards, Ms. Williams because her other children are deceased or ill. *See* Fed. R. Evid. 403, Notes of Advisory Committee on Proposed Rules (" 'Unfair prejudice' within its context means an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one."). Therefore, Plaintiffs, their witnesses, and their counsel should be precluded from discussing the deaths (other than Marquis Jones) and illnesses of Altovese Williams's children in front of the jury.

---

[1] This topic was inadvertently omitted from Defendants' First Motion in Limine [Docket # 140 et seq.] and the Court should find its adjudication of this issue will not materially prejudice Plaintiffs.

## CONCLUSION

For all of these reasons, the Defendants respectfully request that the Court grant their Motion in Limine and bar Plaintiffs, their witnesses, and their counsel from submitting, directly or indirectly, the evidence, testimony and arguments referenced herein to the jury.

**WHEREFORE**, the Defendants respectfully requests the Court grant their Second Motion in Limine for the reasons set forth herein, and provide any other relief the Court deems just and equitable.

### *REQUEST FOR ORAL ARGUMENT*

Defendants hereby request the Court permit oral arguments of the parties regarding Defendants' Second Motion in Limine.

BETTY, NEUMAN & McMAHON, P.L.C.

By: _/s/ Martha L. Shaff_
     Martha L. Shaff    #AT0007215

By: _/s/ Amanda M. Richards_
     Amanda M. Richards    #AT0006646

By: _/s/ Brandon W. Lobberecht_
     Brandon W. Lobberecht#AT0011918

1900 East 54th Street
Davenport, IA 52807-2708
T: 563-326-4491
F: 563-326-4498
E: martha.shaff@bettylawfirm.com
   amanda.richards@bettylawfirm.com
   brandon.lobberecht@bettylawfirm.com

**ATTORNEYS FOR DEFENDANTS, CITY OF BURLINGTON and CHRIS CHIPREZ**

## CERTIFICATE OF SERVICE FOR ELECTRONIC FILINGS

I hereby certify that on _____February 1, 2021_____, I electronically filed the foregoing document with the Clerk of Court using the ECF system and a true copy of the foregoing was served electronically upon the following:

| | |
|---|---|
| David A. O'Brien<br>Dave O'Brien Law<br>1500 Center Street NE<br>Cedar Rapids, IA  52402<br>T: 319-861-3001<br>F: 319-861-3007<br>E: dave@daveobrienlaw.com | Andrew L. Mahoney<br>Crowley & Prill<br>3012 Division Street<br>Burlington, IA  52601<br>T: 319-753-1330<br>F: 319-752-3934<br>E: amahoney@cbp-lawyers.com |
| Nicholas Rowley<br>Matt Reilly<br>Trial Lawyers For Justice, P.C.<br>421 W. Water St.<br>Floor 3<br>Decorah, IA 52101<br>T: 563 -382-5071<br>F: 888- 801-3616<br>E: Nick@tl4j.com<br>   matt@tl4j.com | Haytham Faraj<br>Law Offices of Haytham Faraj<br>1935 W. Belmont Avenue<br>Chicago, IL  60657<br>T: 312-635-0800<br>F: 312-896-5185<br>E: haytham@farajlaw.com |

**ATTORNEYS FOR PLAINTIFFS**

_____*/s/ Martha L Shaff*_____

Altovese Williams, as Administrator of the Estate of Marquis Jones vs. City of Burlington, et al. - Deposition of Altovese Wil

Page 1

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
DAVENPORT DIVISION

Altovese Williams, individually, )
and as Administrator of the )
Estate of Marquis Jones, and as )
next of friend for minors )
B.B.D., M.R.J., Jr., P.D.J., )
M.R.J., III, and M.R.H., )
 ) Case No.
    Plaintiffs, ) 3:19-CV-00043
 )
    vs. )
 )
City of Burlington, )
Chris Chiprez, Joshua Riffel, )
John Doe 1 and John Doe 2, )
 )
    Defendants. )

VIDEOCONFERENCE DEPOSITION OF ALTOVESE WILLIAMS,
taken on Thursday, September 3, 2020, commencing
at 9:47 a.m., at 3012 Division Street,
Burlington, Iowa, before Angela Weible-Jones,
Certified Shorthand Reporter of the State of
Iowa, pursuant to the within stipulation.

Angela Weible-Jones, CSR, RPR, CRR
Weible-Jones Reporting
1503 Forest Lane
Marion, Iowa 52302
(319) 560-5438

Page 2

1  APPEARANCES:
2  David A. O'Brien, of Dave O'Brien Law,
    Attorney at Law, 1500 Center Street,
3   Northeast, Cedar Rapids, Iowa, 52402,
    Attorney for the Plaintiffs, appearing via
4   Zoom.
5  Andrew L. Mahoney, of Crowley & Prill,
    Attorneys at Law, 3012 Division Street,
6   Burlington, Iowa, 52601, Attorney for the
    Plaintiffs.
7
   Martha L. Shaff, of Betty, Neuman & McMahon,
8   P.L.C., Attorneys at Law, 1900 East 54th
    Street, Davenport, Iowa, 52807-2708, Attorney
9   for the Defendants, appearing via Zoom.
10
11
12
13         I N D E X
14 WITNESS       EXAMINATION          PAGE
15 Altovese Williams   D(By Ms. Shaff)    3
16
17
18
19
20      S T I P U L A T I O N
21  "The videoconference deposition of
22 Altovese Williams is being taken at this time and
23 place pursuant to the Federal Rules of Civil
24 Procedure and may be used for all purposes authorized
25 by said Rules."

Page 3

1         ALTOVESE WILLIAMS was called as a witness
2   and, being first duly sworn, testified as follows:
3           DIRECT EXAMINATION
4   BY MS. SHAFF:
5      Q.  Would you please state your name for the
6   record?
7      A.  Altovese Williams.
8      Q.  Ms. Williams, my name's Martha Shaff, and I
9   represent the defendants in this lawsuit.  And I'm
10  going to ask you some questions today.  I'm sure your
11  attorneys have been through the rules of depositions
12  with you, but because we're doing this remotely, I
13  want to make sure that you and I hear each other.
14  Okay?
15     A.  Yes.
16     Q.  So it's really important that if for some
17  reason I break up because of Internet or if you don't
18  hear my question for whatever reason that you let me
19  know.  Okay?
20     A.  Yes.
21     Q.  Also I may ask a question that doesn't make
22  any sense to you.  If I do, will you let me know?
23     A.  Yes.
24     Q.  I'll assume that if you answer the question
25  that you understood the question.  Okay?

Page 4

1      A.  Yes.
2      Q.  You're doing a great job so far, but just in
3   case, it's always really important that you let me
4   finish my question before you answer it.  And I'll
5   try to do the same courtesy to you and let you finish
6   your answer completely before I jump in with another
7   question.  Okay?
8      A.  Yes.
9      Q.  And last, you're doing a great job of giving
10  us audible answers, but it's very important that you
11  give us words versus nods of the head because the
12  court reporter, Angie, can't take down nods of the
13  head.  Okay?
14     A.  Yes.
15     Q.  All right.  What is your date of birth?
16     A.  6/24/1970.
17     Q.  And your current address?
18     A.  Is 800 South 8th Street, Burlington, Iowa.
19     Q.  Do you live there with anyone?
20     A.  Yes.
21     Q.  Who lives with you?
22     A.  My fiance.
23     Q.  What's your highest level of education?
24     A.  Twelfth grade.
25     Q.  And did you graduate from high school?

**EXHIBIT G**

Altovese Williams, as Administrator of the Estate of Marquis Jones vs. City of Burlington, et al. - Deposition of Altovese Wil

Page 5

1  A. GED.
2  Q. Where did you attend high school?
3  A. Burlington High School here in town.
4  Q. And have you lived in Burlington all of your
5  life?
6  A. Since I was 14 years old.
7  Q. Are you currently employed?
8  A. No.
9  Q. Have you been employed since October 1 of
10 2017?
11 A. Yes.
12 Q. Where were you employed at?
13 A. AmericInn Hotel in West Burlington, Iowa.
14 Q. When did you hold employment there?
15 A. I believe last year.  Last year, I believe.
16 Year before last.
17 Q. What did you do for them?
18 A. Housekeeping.
19 Q. Any other jobs you've held since -- or
20 between October 1, 2017, and today's date?
21 A. I worked for -- I'm getting there.  I'm a
22 little nervous.
23 Q. That's okay.
24 A. Was it Quality Inn?  I think it --
25 Holiday Inn Express.

Page 6

1  Q. Also housekeeping?
2  A. Yes.
3  Q. Have you ever been married?
4  A. No.
5  Q. How many children have you had?
6  A. Five in all.
7  Q. And Marquis fell where in the five children
8  in the line-up of oldest to youngest?
9  A. He would have been the youngest.
10 Q. And I thought in the answers to
11 interrogatories it listed three children.  Were there
12 two that were -- Give me the line-up of the names of
13 your children.
14 A. Well, I miscarried with a set of twins.  I
15 didn't --
16 Q. Okay.
17 A. -- get to name them.
18 Q. Got it.  I'm sorry to hear that.
19 A. So it would have been Totiana Monique
20 Williams first.  She was born in '87.  Then I had
21 Phillip Dominique Dwayne Jones in '89.  Then I --
22 well, I think I had the twins -- No, I had the twins
23 before Marquis, so that was a while back.  And then
24 Marquis was the last.
25 Q. And his date of birth was . . .

Page 7

1  A. His is 5/23/90.
2  Q. And who was Marquis' father?
3  A. Phillip Jones.
4  Q. And do you know if Mr. Jones is still alive?
5  A. Yes, he is.
6  Q. And where does he reside?
7  A. Flint, Michigan.
8  Q. And was Phillip Jones involved in the
9  raising of Marquis?
10 A. Not really, no.
11 Q. Did he provide financial support to Marquis
12 while he was growing up?
13 A. No.
14 Q. And has Mr. Jones lived in Burlington in the
15 last ten years, to your knowledge?
16 A. Yes.
17 Q. Okay.  When was the last time he was living
18 in Burlington, to your knowledge?
19 A. About a year ago.
20 Q. Was he residing in Burlington on October 1,
21 2017, if you know?
22 A. No.
23 Q. And that was a bad question.  No, you don't
24 know, or no, he wasn't?
25 A. No -- I'm sorry.  No, he wasn't.  I think he

Page 8

1  was incarcerated then.
2  Q. Okay.  And do you know what he was
3  incarcerated for?
4  A. No.
5  Q. Have you ever been convicted of a felony?
6  A. No.
7  Q. Have you ever been convicted of an
8  aggravated misdemeanor?
9  A. No, I don't -- No.
10 Q. Now, in your answers to interrogatories you
11 indicated that Marquis lived with you at least
12 through high school, except when he was in
13 detentions.  Is that correct?
14 A. Yes.
15 Q. So did he graduate from high school or did
16 he get a GED?  What did he do?
17 A. He graduated.
18 Q. And what year did he graduate?
19 A. Oh, goodness.  It would have been two -- It
20 had to be like 2010, '11.  It was the year I lost my
21 first son, I believe.  I might have it wrong.
22 Q. Okay.  And did he graduate on time with his
23 regular class that he progressed through the years
24 with?
25 A. Yes.

2 (Pages 5 to 8)

Case 3:19-cv-00043-SMR-HCA  Document 146-1  Filed 02/01/21  Page 7 of 7

Altovese Williams, as Administrator of the Estate of Marquis Jones vs. City of Burlington, et al. - Deposition of Altovese Wil

Page 9

1  Q. What high school did he attend?
2  A. BHS here in town.
3  Q. Did he participate in any sports when he was
4  in high school?
5  A. Yes.
6  Q. What sports did he participate in in high
7  school?
8  A. He did football.
9  Q. Did he do it all four years or what years?
10 A. Not sure.
11 Q. How many times was Marquis in detention when
12 he was growing up?
13 A. Maybe a couple times.
14 Q. Now, you mentioned that your son Phillip was
15 murdered; is that correct?
16 A. Yes.
17 Q. And that was around 2010?
18 A. Yes.
19 Q. Where did that take place?
20 A. Flint, Michigan.
21 Q. And is there a connection to Flint,
22 Michigan, for your -- well, for the father of
23 Marquis? I mean other than the fact that he lives
24 there right now, was he raised there, or how does
25 Flint, Michigan, come about?

Page 10

1  A. When he got older, he wanted to go there and
2  stay with his grandmother there.
3  Q. Is that your son Phillip or the -- Phillip
4  Jones, the father of Marquis?
5  A. Both.
6  Q. Okay. You also have the daughter Totiana;
7  is that correct?
8  A. Yes.
9  Q. And does she live in Burlington currently?
10 A. Yes.
11 Q. Was she living in Burlington in October of
12 2017?
13 A. Yes.
14 Q. And I think I read that she suffers from
15 sickle cell anemia. Is that correct?
16 A. Yes.
17 Q. Does she work?
18 A. No, she doesn't have a job.
19 Q. Do you know if she was employed in
20 October of 2017?
21 A. She -- could I answer that fully or . . .
22    MR. MAHONEY: You can go ahead and answer.
23 Q. Sure.
24 A. She -- With her illness, she wouldn't be
25 able to hold a job. She receives SSI.

Page 11

1  Q. Okay. And I was going to ask whether the
2  illness prevented her from having a job. Does she
3  live on her own?
4  A. Yes.
5  Q. All right. So when Marquis graduated from
6  high school, what did he -- did he move out at that
7  point? Or take me through when he moved out of your
8  home.
9  A. Not right then. He went to Kirkwood College
10 a little bit after that. Not sure entirely, you
11 know, what year. It's been so long ago.
12 Q. And what was he going to study there?
13 A. I think he told me business administration.
14 Q. Was he involved in any athletics at
15 Kirkwood?
16 A. No.
17 Q. And do you know why he stopped studying at
18 Kirkwood?
19 A. No.
20 Q. Do you know if he obtained any degrees from
21 Kirkwood?
22 A. No, he --
23 Q. That's a bad --
24 A. -- did not.
25 Q. He did not. Okay. It was a bad question on

Page 12

1  my part. All right. So between graduating from high
2  school and October 1 of 2017, are you aware of
3  Marquis being incarcerated at any time?
4  A. Yes.
5  Q. Okay. Can you tell me how many times?
6  A. No.
7  Q. More than once?
8  A. Yes.
9  Q. And do you know where he was incarcerated?
10 A. Here in West Burlington and Newton, Iowa.
11 Q. Do you know the nature of the offense that
12 resulted in him being incarcerated in Newton, Iowa?
13 A. Oh, that's so long ago. I know probation
14 violation.
15 Q. And do you know what led to him being on
16 probation?
17 A. He got in trouble for -- I think some kind
18 of theft or something. It's been so long ago. I
19 honestly don't remember.
20 Q. Did you go visit him while he was
21 incarcerated in Newton?
22 A. No.
23 Q. And do you recall how long he was there?
24 A. About a couple of years.
25 Q. Are you aware of whether or not Marquis had